GREGG KENDALL & ASSOCIATES, INC., Plaintiff-Appellee, v. GILBERT KAUHI, Defendant-Appellant

No. 5037

August 19, 1971

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY ABE, J.

The defendant, Gilbert Kauhi, hereinafter called the Actor, plays the role of "Zulu" in "Hawaii Five-O" television movie. The plaintiff, Gregg Kendall & Associates, Inc., hereinafter called the Agent, brought this action against the Actor in the District Court of Honolulu to recover the commission alleged to be due for the calendar year 1969. It is admitted by the Agent that all commissions due it from the pilot film and from the television serial that followed for the year 1968 have been paid.

In the District Court prior to the trial, the Actor interposed a demand for arbitration or failure of plaintiff to arbitrate as a defense by various oral motions. These motions were denied and after trial on the merits, the District Court entered judgment for the Agent. The Actor appealed to the Circuit Court of the First Circuit in Civil No. 30926.

Two days after the appeal was perfected in the Circuit Court, the Actor on May 20, 1970 filed the "Answer and Counterclaim" with a demand for a jury trial. On May 27, 1970, the Actor also filed in the Circuit Court an "Application for Order" to proceed with arbitration pursuant to HRS § 658-3, Civil No. 31027. The appeal, Civil No. 30926, and Civil No. 31027 were consolidated for a hearing. After a hearing, the Circuit Court denied the Actor's motion for stay filed in Civil No. 30926 and his application for order to compel arbitration in Civil No. 31027 on the grounds that the Actor had waived his right to arbitration and also that arbitration was not the sole remedy.

The Actor requested leave for an interlocutory appeal from the Circuit Court's rulings. This was denied and the parties proceeded with the trial on the merits of the case. During the trial, it was shown that the Agent required any person using its services in seeking employment in movies

to sign an agreement[1] designating it as his agent before he was permitted to read lines. When a person refused to sign, he was not given an opportunity to read a line, and therefore he could not get a part.

It also appears that soon after the Actor was given a role in the pilot film and had signed a contract with the producer, he and the Agent signed a two-paragraph agreement (called Rider Contract) and attached it as a rider to the contract signed by the producer and the Actor.

Thereafter, when a decision was reached to continue the Hawaii Five-O pilot film as a television serial, on March 22, 1968, the parties to this action executed a printed formal document called the "Agency Contract." It was this Agency Contract that contained the arbitration provision.

When both of the parties rested in the Circuit Court trial, the record showed the facts above recited plus the admission of the Agent that it was only entitled to one 10 per cent commission under the Rider Contract or the Agency Contract. Based on the record, the Agent's attorney moved for a directed verdict. The Circuit Court having ruled prior to the trial that the Actor had waived his right to arbitration, it became immaterial to decide whether the commission claimed to be owing was payable under the Rider Contract, or the Agency Contract, and the judge directed a verdict for the Agent. The judgment was entered accordingly and the Actor appealed.

## I.

The Actor contends that prior to the trial of the case in the District Court, he made various oral motions alleging the need for arbitration as a defense as well as requesting the stay of the trial pending arbitration. The Agent admits that arbitration was made an issue in the District Court prior to the trial of the merits. However, the Agent argues that:

---

[1]This agreement is neither the Rider nor Agency Contract and it has not been introduced in evidence.

"[T]he Defendant [Actor] not only failed to file written pleadings or motions in response to Plaintiff's complaint in the District Court, but allowed the suit to proceed to judgment prior to filing any written claim that it was entitled to arbitration. Such conduct is totally inconsistent with any notion that Defendant treated the arbitration provision as being in effect or that it intended to avail itself of the provision, and resulted in great expense and prejudice to Plaintiff. Under these circumstances, the Circuit Court was clearly justified in concluding that Defendant had lost any right to arbitration of the dispute which he might have had."

The Agent, while admitting that the Actor raised the issue of arbitration by oral motion and answer, seems to question the sufficiency of such oral motions and answers. It is correct, as the Agent argues, that there is no law or rule to prevent the Actor from filing a written answer or motion. On the other hand, in the district courts no law or rule requires the filing of written answers or motions, and oral motions and answers are considered to be sufficient. Therefore, the oral motions and answers were as effective as any written pleading and the issue of arbitration was properly before the District Court.

The Agent also argues that the issue of arbitration was not seasonably raised because it was not made an issue until after the action had been instituted in the District Court. The provision of HRS § 658-5 is crystal clear and provides that "if any suit or proceeding is brought upon any issue, referable to arbitration under an agreement in writing" the court should stay the trial of the action if the court is "satisfied that the issue involved in the suit or proceeding is referable to arbitration." There is no question that the Actor seasonably raised the issue of arbitration, even though the issue was first raised after the action had been instituted. Courts of other jurisdictions have also so interpreted similar statutes. *Wm. Linker Co. v. Feinberg*, 360 Pa. 601, 62 A.2d 839, 841 (1949); *Almacenes Fernandez,*

*S.A. v. Golodetz,* 148 F.2d 625, 627-28 (2d Cir. 1945); *Haupt v. Rose,* 265 N.Y. 108, 191 N.E. 853, 854 (1934). It may be correct that HRS § 658-5 applies specifically to the circuit courts, but we see no reason why a similar rule should not be applicable on the same issue in the district courts.

As it has been noted above, after the appeal had been perfected in the Circuit Court the Actor not only filed a written answer alleging arbitration as a defense and moved for a stay of the action but also instituted a new proceeding to compel the Agent to arbitrate pursuant to HRS § 658-3. The actions taken by the Actor in the District Court and the Circuit Court clearly show that at all times he had insisted on his right to arbitration and the circuit judge erred in ruling that he had waived his right to arbitration.

## II.

The Agent also argues that the Actor was in default in proceeding with the arbitration and therefore he was not entitled to stay the action under the provisions of HRS § 658-5. To support its contention, it argues that:

> "Cases decided under the Federal [Arbitration] Act have used the terms 'default' and 'waiver' interchangeably in determining whether a party is entitled to a stay of trial. *See, e.g., Cornell & Co. v. Barber & Ross Co.,* 360 F.2d 512 (D.C. Cir. 1966). And it has been consistently held under that Act that a trial court possesses discretion to refuse to stay an action on a contract which provides for arbitration, and to deny a motion to refer a dispute to arbitration, where the court is of the opinion that the moving party is *in default in proceeding with arbitration.*" (Emphasis added.)

We have no quarrel with the stated rule. However, here there is no evidence to show that the Actor *was in default in proceeding with arbitration.* On the other hand, there is no question that ever since the action was commenced in the District Court, the Actor has been insisting on his right to

arbitration and has attempted to stay the action pending arbitration.

The term "default in proceeding with the arbitration" is unambiguous and it can only mean that when a party refuses to participate in arbitration, such as in the appointment of an arbitrator or the like, then and only then can he be deemed to be in "default in proceeding with the arbitration." The word "default" used in the statute does not pertain to breach or default of performance undertaken in the contract in which an agreement to arbitrate is a covenant. *Weiman v. Superior Court,* 51 Cal. 2d 710, 336 P.2d 489 (1959); *Riess v. Murchison,* 384 F.2d 727 (9th Cir. 1967); *In re Orange Pulp & Paper Mills, Inc.,* 24 N.Y.S.2d 961, 261 App. Div. 840 (1941).

The record fails to show that the Actor was "in default in proceeding with arbitration" when he moved to stay the action and he was entitled to relief under the provisions of HRS § 658-5.

## III.

It is correct that the arbitration clause, paragraph 10 of the Agency Contract, does not provide arbitration as the exclusive remedy. We agree with the Agent that where arbitration is not made a "condition precedent to any right of action" or where "arbitration is not the exclusive remedy * * * the existence of an agreement to arbitrate will not preclude the bringing of a lawsuit by one of the parties to the agreement."

As this court has noted, the proclaimed public policy of our legislature is to encourage arbitration as a means of settling differences and thereby avoid litigation. *Mars Constr. v. Tropical Enterprises,* 51 Haw. 332, 460 P.2d 317 (1969); *Richards v. Ontai,* 20 Haw. 198 (1910); *Thomas v. Lunalilo Estate,* 5 Haw. 39 (1883). In furtherance of this policy, HRS § 658-5 provides that after action is instituted and the issue of arbitration is raised the action shall be stayed pending arbitration. Thus, if the claim for com-

mission is referable to arbitration under the terms of the contract, HRS § 658-5 requires the court, upon the request of the Actor, to stay the action. Also under HRS § 658-3, the Actor had the right to compel the other party to arbitrate.

Therefore, though the circuit judge may have been correct in ruling that the agreement does not make arbitration the exclusive remedy, he erred in refusing to stay the action or to compel' arbitration as provided by law.

## IV.

Now, having decided that the Actor was entitled to insist on arbitration under the Agency Contract, if that is the contract under which the Agent was entitled to commission, we must decide whether the Agency Contract or Rider Contract was in effect.

Inasmuch as the circuit judge ruled that the Actor had waived his right to arbitration, the Circuit Court did not and was not required to rule on this issue. Thus, ordinarily the issue would be remanded to the trial court for its resolution especially if in such determination factual issues are involved. Here no factual questions are involved; and inasmuch as it is a question of law which must ultimately be decided by this court, we believe that in the furtherance of justice, the issue should be determined by this court without remand.

The Agent admits that it is only entitled to one 10· per cent commission and that it is claiming commission under only one contract. But under which contract—the Rider or Agency?

The Agent in its brief and argument before us is very positive as to its claim being under the Rider Contract. However, the record shows that this positive position was not taken by the Agent in the District Court or the Circuit Court. In the District Court, the Agent in the complaint after alleging the execution of both the Rider and Agency contracts claimed that "as a result of *said contracts,* as set forth in the Exhibits attached hereto, Defendant agreed to

pay Plaintiff 10 per cent of his gross salaries * * *."
(Emphasis added.)

Also, it is interesting to note that the Agent on its motion for a directed verdict argued that as the Actor admitted signing both the Rider Contract and the Agency Contract, the Agent was entitled to one 10 per cent commission under one of the contracts. And, therefore, there was no issue for the jury to decide.

Before us, the Agent contended that the Agency Contract "rather than supplanting the earlier contract, coexisted with it and pertained to an entirely different subject matter than that upon which recovery was sought."

It appears that the producer at the same time the Actor signed a contract with him also required the Actor to sign the Rider Contract, which he prepared and attached to the producer-actor contract. At the time the producer-actor contract and the Rider Contract were executed, all the parties were contemplating and hoping that the pilot film would prove successful and that it would be followed by a television serial. Subsequent to showing of the pilot film, it appears that a decision was reached to produce Hawaii Five-O as a television serial and on March 22, 1968, the parties here entered into the Agency Contract, a formal document containing seven printed pages.

Let us now consider the "Rider Contract." It is a somewhat informal document containing two paragraphs. The first paragraph provides that for the services rendered by the Agent in securing a role for the Actor in the Hawaii Five-O pilot film and negotiating for his salaries, "said agent will receive 10% of [the actor's] gross salaries * * *." The second paragraph reads that "should said movie/pilot turn into a television series, [the Agent] would represent [the Actor] as the character he had portrayed in the original HAWAII FIVE-O for the length of said undersign's [sic] run in the series."

There is no question that the Actor by the first paragraph agreed to pay the Agent a commission of 10 per cent

from the salaries he received from the pilot film in consideration for the services of the Agent. Under the provisions of the second paragraph the only thing mutually agreed upon by the parties was that the Agent would continue to represent the Actor as his agent for the duration of the television series, if and when the pilot film should be followed by a television serial. There is no mutual assent as to other material terms, such as type of services to be rendered by the Agent, consideration to be paid by the Actor, etc. Thus, it would appear that the parties merely agreed to enter into an agent-actor contract upon the happening of an event under such terms and conditions as may be mutually agreed upon.

Then, in furtherance of this objective the parties on March 22, 1968 executed the Agency Contract. The Agency Contract spells out the terms and conditions of the agreement in detail. Paragraph (1) of the Agency Contract reads: "The Actor employs the Agent as his agent for television motion pictures * * * and the Agent accepts such employment. This contract is limited to television motion pictures and to contracts of the Actor as an actor in such pictures * * *." Paragraph (2) reads: "The term of this contract shall be for a period of length of HAWAII FIVE-O series * * *."

There is no question that Hawaii Five-O is a television motion picture and it is covered by the provisions of Paragraph (1) of the Agency Contract. If the parties wanted to except the services of the Actor in the Hawaii Five-O television serial from the provisions of the Agency Contract, the parties could have simply done so by writing in such an exception. However, instead of excepting the services of the Actor in Hawaii Five-O, paragraph (2) of the Agency Contract ties the duration of the contract for the run of the Hawaii Five-O series, definitely indicating that the services of the Actor in the serial is covered by the contract. We hold that the commission in dispute is covered by the Agency Contract and not the Rider Contract.

## V.

Paragraph (10)[2] of the Agency Contract provides that "any controversy under the contract * * * shall be submitted to arbitration * * *." The commission payable under the provisions of the Agency Contract is definitely an issue referable to arbitration as it is a "controversy *arising under*" the Agency Contract.

Reversed and remanded for further proceedings consistent with this opinion.

*Joseph A. Ryan (Ryan & Ryan* of counsel) for defendant-appellant.

*L. Richard Fried, Jr. (Pratt, Moore, Bortz & Case of* counsel), for plaintiff-appellee.

---

[2]"(10) Any controversy under this contract, or under any contract executed in renewal or extension hereof or in substitution herefor or alleged to have been so executed, or as to the existence, execution or validity hereof or thereof, or the right of either party to avoid this or any such contract or alleged contract on any grounds, or the construction, performance, nonperformance, operation, breach, continuance or termination of this or any such contract, shall be submitted to arbitration in accordance with the arbitration provisions in the Regulations regardless of whether either party has terminated or purported to terminate this or any such contract or alleged contract. * * *"