HOOVER GROUP INC., Petitioner,

v.

PROBALA & ASSOCIATES and Container Services and Supplies, Inc., Respondents.

No. 89 CV 0281.

United States District Court, N.D. Ohio, E.D.

April 25, 1989.

Arthur E. Korkosz, Jill G. Ikun, Squire, Sanders & Dempsey, Cleveland, Ohio, for petitioner.

Peter Sackett, Cleveland, Ohio, for respondents.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

This matter is before the Court on petitioner's motion, brought under the Federal Arbitration Act, for an order compelling consolidation of the pending arbitrations between petitioner and respondents, pursuant to 9 U.S.C. sec. 4.

*Factual Background*

There appears to be no dispute over the relevant facts, which can be summarized as follows: In July of 1988, respondent Probala & Associates (Probala) commenced arbitration with the American Arbitration Association in Cleveland, Ohio against Hoover Group, Inc. (Hoover) for an alleged breach of obligation to pay commissions. The contract at issue was a sales representative agreement, whereby Probala agreed to sell Hoover's products in the Northern Ohio region. Probala alleges that it has not received the full measure of commissions purportedly due regarding sales to a single customer, Pittsburgh Plate and Glass Company (PPG). Probala claimed that the shipping and engineering portions of the commission should have been allocated differently (not in dispute is Container Services' entitlement to the portion of the commission for ordering or sales territory).

In August of 1988, Hoover filed its answer to Probala's arbitration demand, denying all of Probala's claims. Having already paid the commissions claimed by Probala to respondent Container Services and Supplies Inc. (Container Services), Hoover commenced arbitration with the American Arbitration Association in Cleveland against Container Services. Hoover's arbitration demand seeks a declaration that Container Services (Hoover's sales representative responsible for the Pittsburgh territory) is the party properly entitled to commissions now claimed by Probala or in the alternative, an award against Container Services for the wrongful payment of said commissions.

Container Services' sales representative agreement with Hoover is identical to that between Hoover and Probala and contains identical arbitration clauses and commission schedules. Paragraph 19 of the contract contains the arbitration clause which reads in pertinent part "any disputes or controversies arising under or relating to the subject matter of this contract, shall be arbitrated pursuant to the rules of the American Arbitration Association ..." The clause contains no limitation as to the parties which may be involved in arbitration, and does not prohibit or mandate consolidation.

On February 10, 1989 a preliminary conference was held between Probala and Hoover before the arbitration panel. Hoover raised the issue of consolidating the Probala and Container Services arbitrations. Probala refused to agree to consolidation (Container Services, however, has agreed to consolidation). Absent the consent of all parties, the arbitration panel was not able to grant Hoover's consolidation request. The panel set the arbitration hearing for June of 1989. Hoover then petitioned this Court for an order compelling consolidation.

*Discussion*

The issue now presented is whether a Federal Court, acting under Title 9, can compel a consolidated arbitration when the agreements to arbitrate are embodied in separate contracts (although there is one common party to both agreements, and both agreements are essentially identical),

and neither of the contracts provide for consolidated arbitration. Even if this Court has the power to consolidate the arbitrations (and Probala does not argue otherwise or cite any cases opposing the Court's ability to consolidate the cases) Probala contends that the Court should not mandate consolidation, since there are purportedly no issues of fact common between their arbitration and the Hoover–Container Services arbitration. Probala also claims that the arbitration panel agreed to limit the arbitration to Probala's claims.

## A. *Authority to Compel Consolidation of Arbitrations*

In interpreting the Federal Arbitration Act, courts do not agree on whether the Act allows for the consolidation of arbitration proceedings. *See Seguros de Servicios de Salud de Puerto Rico, Inc. v. McAuto Systems Group, Inc.*, 121 F.R.D. 154, 158 (D.P.R.1988). One commentator has suggested that a consolidated arbitration in a tri-partite dispute as presented here by Hoover is the preferred procedure:

> Two or more separate arbitration proceedings may be ordered to be consolidated by the courts when at least one party is common to the arbitrations to be held and the issues are substantially the same, as long as no substantial right of a party is prejudiced by the consolidation. Thus, for example, where two contracts containing broad arbitration clauses have different provisions as to the amount of goods and the price, but where the same witnesses would be called and the same testimony heard by the same persons in each proceeding, the arbitrations may be consolidated ... Courts have generally taken a favorable view of consolidation of arbitrations, even when there is no specific statutory support for it ... [and] even over the objections of one of the parties.

M. Domke, The Law and Practice of Commercial Arbitration, Sec. 27.02 at 413–415 (Rev.Ed.).

The Federal Arbitration Act applies to written agreements "evidencing a transaction involving commerce." 9 U.S.C. sec. 2; *Southland Corporation v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

The Sales Representative Agreements created for the sale and distribution of Hoover's products (Tote bins and Tote tanks) manufactured in Nebraska and sent for sale to respondents' territories falls within the Act. Although paragraph 19 of the agreement states that the agreement "shall be governed by and interpreted in accordance with the laws of the state of Michigan", the validity and application of an arbitration clause in a diversity case is subject to federal law. *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed. 2d 1 (1984).

Federal Rules of Civil Procedure 42(a) and 81(a)(3) have been found to provide an "ample legal basis" for compelling joint arbitration. *Robinson v. Warner*, 370 F.Supp. 828, 831 (D.R.I.1974). Rule 42(a) expressly provides for consolidation in situations involving common questions of law or fact and the Federal Rules are generally made applicable to the Federal Arbitration Act as to matters of procedure not covered by the latter (Fed.R.Civ.P. 81(a)(3)). The Arbitration Act is silent as to the issue of consolidating arbitration proceedings. Several courts have therefore held that federal courts can properly order consolidation. *See, e.g. Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966 (2nd Cir.1975), *cert. denied;* 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976); *Elmarina, Inc. v. Comexas, N.V.,* 679 F.Supp. 388 (S.D.N.Y.1988); *Gavlik Const. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 787–789 (3d Cir.1975).

Disagreeing with *Robinson* and *Nereus* and their progeny, several courts which have addressed the issue of consolidation in multi-party disputes involving common questions of law or fact have emphasized the importance of narrowly reading contract terms to determine whether the parties intended joint arbitration. *Del E. Webb Const. Co. v. Richardson Hospital Authority*, 823 F.2d 145, 149–150 (5th Cir. 1987); *Weyerhaeuser v. Western Seas Shipping Co.*, 743 F.2d 635, 637 (9th Cir.), *cert. denied*, 469 U.S. 1061, 105 S.Ct. 544, 83 L.Ed.2d 431 (1984); and *Ore & Chemical Corp. v. Stinnes Interoil, Inc.*, 606 F.Supp. 1510 (S.D.N.Y.1985). These courts refuse to order consolidation when the

terms of the contract did not provide for joint consolidation. In *Weyerhaeuser,* the Ninth Circuit stated that "the only issue properly before this Court is whether Weyerhaeuser, Karlander, and Trans–Pacific are parties to a written agreement providing for consolidated arbitration." 743 F.2d at 637. The Ninth Circuit considered the standards for consolidation of the Federal Rules as irrelevant, and narrowly read Section 4 of the Arbitration Act which requires the court to enforce the agreement "in accordance with its terms." Without consent of all the involved parties, "to order joint arbitration among the three parties would directly contravene their clearly expressed understanding." *Weyerhaeuser Co. v. Western Seas Shipping Co.,* 568 F.Supp. 1220 (N.D.Cal.1983), *aff'd* 743 F.2d 635 (9th Cir.1985).

In *Ore,* the court relied on *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), in which the Supreme Court addressed the scope of the Federal Arbitration Act, and on *Weyerhaeuser. Ore* has not been followed by subsequent cases from the same district. *See e.g. Elmarina, Inc. v. Comexas, N.V.,* 679 F.Supp. 388, 389 (S.D.N.Y.1988) (holding that court has discretionary power to consolidate arbitrations), and cases cited therein.

In *Dean Witter,* the Supreme Court held that the Arbitration Act requires district courts to compel arbitration of pendent arbitrable state claims to a federal securities action where a valid agreement to arbitrate exists. The district court had concluded that simultaneous arbitration and litigation concerning the same facts would result in inconsistent results and cause needless duplication and expenditure of scarce resources. The Supreme Court rejected this conclusion, finding that arbitration agreed to in the contract should be compelled, even when the result would be the possibly inefficient maintenance of separate proceedings in different forums. The Court never addressed the issue of whether a district court can compel consolidation. The Court stressed that the Congressional intent in passing the Arbitration Act was to overcome the reluctance of some courts to enforce arbitration agreements. 470 U.S. at

219–220, 105 S.Ct. at 1241–1242. *Dean Witter,* while instructive as to the legislative history of the Act, and on the issue of compelling arbitration of state claims while proceeding with federal litigation, presents no holding on the issue of compelling consolidation of two related arbitration proceedings. Furthermore, the Court's analysis in *Dean Witter,* which emphasized the overriding Congressional goal of enforcing arbitration agreements, which motivated the Court in *Dean Witter* to allow separate proceedings, leads to a different result in the circumstances of this case.

The Sixth Circuit has yet to indicate its position on this issue. In *Cincinnati Gas & Electric Co. v. Benjamin F. Shaw Co.,* 706 F.2d 155 (6th Cir.1983), however, the Sixth Circuit held that the order of a district court compelling arbitration and staying proceedings pending arbitration was a final decision appealable under 28 U.S.C. sec. 1291. The court also stated that the language in Section 4 of the Arbitration Act, that "[t]he court shall hear the parties ..." prior to compelling arbitration, does not require an evidentiary hearing. *Cincinnati Gas & Electric,* 706 F.2d at 159. While the Sixth Circuit did not address the issue presented in this case, the court emphasized that where the arbitration clause in a contract is broad (e.g. "Any controversy or claim arising out of this Agreement ... shall be determined by arbitration ..."), as it is here, "[d]oubts should be resolved in favor of coverage." *Id.* quoting *United Steelworkers v. Warrior & Gulf Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). On the other hand, the court also stated that "a court's function in an action to compel arbitration is limited to asserting whether the party seeking arbitration is making a claim which on its face is covered by the contract." *Cincinnati Gas & Electric* at 160, *quoting Hamilton Life Insurance Co. v. Republic National Life Insurance Co.,* 408 F.2d 606, 609 (2d Cir.1969). The court did not address the issue of consolidation.

### B. *Consolidation of the Arbitrations in this Case*

The Court is inclined to agree with the Second Circuit's more "liberal" reading of

the Arbitration Act in *Nereus* rather than the narrower reading of the Ninth Circuit in *Weyerhaeuser*. The Arbitration Act, while designed to effectuate the private agreements of parties, was also designed to promote the efficient resolution of disputes.

In the instant case, if the Hoover–Probala arbitration clause is to be enforced "in accordance with its terms", consolidation is the preferable result. The language of the Hoover–Probala and Hoover–Container Services agreements, unlike the language apparently contained in the *Weyerhaeuser* arbitration clause, suggests that Hoover, Probala and Container Services should reasonably have expected joint arbitration in the circumstances presented by this case. In *Weyerhaeuser*, "[e]ach agreement contain[ed] its own arbitration clause and each clause require[d] only arbitration between the parties to the agreement." 743 F.2d at 637. In the Hoover agreements, however, arbitration is required for disputes or controversies "arising under *or relating to* the subject matter of this contract" (emphasis added).

Furthermore, the goals of fairness and efficiency in litigation, present in both the Arbitration Act and the Federal Rules of Civil Procedure, indicate that consolidation in this case is appropriate. The Southern District of New York has defined several factors which this Court finds useful in considering whether to consolidate these arbitrations:

a) "the possibility of conflicting findings, and (2) which parties had access to the relevant information." *In re Marine Trading Ltd.*, 432 F.Supp. 683, 684 (S.D. N.Y.1977);

b) "when the 'interests of justice' so require either because the issues in dispute are substantially the same and/or because a substantial right might be prejudiced if separate arbitration proceedings are conducted." *In re Czarnikow–Rionda Co., Inc.*, 512 F.Supp. 1308, 1309 (S.D. N.Y.1981);

c) "where there are common questions of law or fact and a possibility of conflicting awards or inconsistent results." *Sociedad Anonima de Navegacion Petrolera v. Cia. de Petroleaos de Chile S.A.*, 634 F.Supp. 805, 809 (S.D.N.Y. 1986); and

d) "when there exist common questions of law and fact or to avoid undue prejudice, delay or cost." *In re General Navigation Inc.*, 1981 A.M.C. 1781, 1783 (S.D.N.Y.1981).

*Elmarina, Inc.*, 679 F.Supp. at 391.

The two arbitrations present common questions of law and fact, and a danger of conflicting findings and awards. Hoover, having already paid commissions to Container Services may be compelled to pay them twice if the proceedings are not united and the issue resolved among all involved parties. In deciding the proper distribution of commissions the arbitration panel will be faced with identical issues of fact, *i.e.*, the sales to PPG and the efforts by Probala and Container Services in support of the sales. The arbitrators will also be confronted with identical legal issues, *i.e.*, the interpretation of the same sales representative agreement. Finally, Container Services has access to relevant information, which will be needed during the Hoover–Probala arbitration. Resolution of this dispute will require testimony by representatives of both respondents, and will require documentary evidence, *e.g.*, invoices and commission statements which would be identical in both arbitrations.

Probala contends that there are no common issues of fact in the pending arbitrations. In support of this assertion, Probala states that the "sole determinative factor in Probala's petition [for arbitration] is the amount of commissions paid to sales representatives in the delivering territory" and that it "has never claimed the right to monies paid to Container Services." Probala acknowledges, however, that absent consolidation, Hoover may well be required to pay double commissions. This recognition underscores the existence of common issues in these claims. If both parties were not claiming entitlement to identical commissions, there would be no risk of double payment.

Probala has not demonstrated that any prejudice would result if the arbitrations

were consolidated. Probala's submissions to the Court do not indicate how consolidation would be more burdensome than separate proceedings. The witnesses and documentary evidence to justify commission allocations are likely to be identical in each case. Finally, Probala has not convinced the Court that the arbitration panel agreed to limit the arbitration to Probala's claims, or that any such agreement would properly be dispositive of Hoover's petition.

*Conclusion*

For the reasons stated above, the petition to compel consolidated arbitration is granted. The disputes arising out of the Hoover–Probala and Hoover–Consolidated Supplies contracts are consolidated and the parties are directed to submit their disputes to a single arbitration panel, in accordance with the Rules of the American Arbitration Association as provided in the two agreements. This case is dismissed and terminated.

IT IS SO ORDERED.