**WESTIN HOTEL COMPANY**, Claimant–Appellant, v. **UNIVERSAL INVESTMENT, INC.**, Respondent–Appellee

NO. 14780

(S.P. NO. 90–0099)

MAY 14, 1991

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY PADGETT, J.

This is an appeal from an order denying a motion to confirm an arbitration award. The appellee below raised two contentions. First, that there was no agreement to arbitrate, and that consequently the arbitrator had no jurisdiction to make the award. Second, appellee contended that the court below did not have personal jurisdiction over it because of a lack of sufficient nexus between its activities and the State of Hawaii. The judge below did not articulate whether the order below was entered because he upheld the first ground, or the second ground, or both.

Although the order below was not an order described in HRS § 658–15, we nevertheless hold that we have jurisdiction over this appeal. In *Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 705 P.2d 28 (1985), we held that an order refusing a stay of proceedings pending arbitration requested under HRS § 658–5, and an order refusing to compel arbitration, which had been applied for under HRS § 658–3, were appealable orders, because they finally adjudicated the question of the right to arbitration.

In the present case the issue of whether or not there existed an agreement to arbitrate, and thus a right to arbitration, was urged in the court below, by the appellee, in response to the motion to confirm the award. Under HRS § 658–3 that issue could, and should, have been raised by the appellee when the demand for arbitration was first made. If it had been, then a proceeding as outlined in HRS § 658–3 could have been brought by the appellant, a court determination made, and the determination either way would have been appealable under the *Swinerton* decision, without the expense and delay of going all the way through the arbitration proceeding.

Appellee's tactic of failing to respond to the demand for arbitration, and delaying raising the question of the existence of an

agreement to arbitrate until a later stage of the proceedings, does not defeat our jurisdiction.

If the denial of confirmation was based on appellee's contention that the arbitrator lacked personal jurisdiction over the appellee, that issue was also appealable.

The factual background of this case is that on July 29, 1988, one Mitzie Calder on behalf of Travel Selections, Inc., an alleged agent of appellee Universal Investment Company, entered into an agreement for certain hotel accommodations in July of 1989 with the Westin Kauai Hotel. That agreement contained a liquidated damages provision should the hotel reservations be cancelled, and an arbitration clause.[1]

The agreement executed by Calder on July 29 was dated July 22, 1988. Appellant's claim is that Calder was authorized to execute it by a letter agreement which she claimed to have made with appellee on July 27, 1988. The dispute seems to be whether or not Paul M. Biko, the president of appellee (who had been the person who made the arrangements with Calder the previous year, and had signed the documents for that year) in fact signed the July 27, 1988 letter.

Appellant was in possession of what purported to be a signed copy of the July 27, 1988 letter agreement, and of the agreement executed by Calder on July 29, 1988. Therefore, when Calder notified appellant that the accommodations were to be cancelled, appellant invoked the liquidated damages clause in the agreement, and made a demand dated October 20, 1989, for arbitration on the appropriate American Association of Arbitration form, which demand, appellee admits it received.

Pursuant to the demand on November 30, 1989, the American Arbitration Association, by letter to Walter H. Ikeda, Esq., named

---

[1] Mitzie Calder had contracted with Westin Kauai as agent for Universal Investment Company, for similar accommodations in the year 1988.

him arbitrator, sending copies thereof to appellant's attorney and to appellee. Appellee did not respond to the demand, or to the notification of the naming of the arbitrator, nor did it appear at the arbitration hearing.

After the arbitrator had heard the evidence submitted by the appellant, he directed the American Arbitration Association to inform appellee that it would have an additional opportunity to submit any evidence in writing that it wished the arbitrator to consider. This was done by a letter to appellant's attorney and to the appellee dated February 16, 1990. In response thereto, on February 22, 1990, an attorney named Steven A. Stepanian, II, on behalf of appellee, sent a letter to the American Arbitration Association contending that there was no written contract or agreement between appellee and appellant, and that, since appellee allegedly conducted no business in Hawaii, no Hawaii federal or state courts had jurisdiction over it. Attached to the letter was a copy of the July 27, 1988 letter from Travel Selections to appellee but this copy did not bear a purported signature of Paul Biko. Also attached was a copy of a letter from Travel Selections to appellee dated September 9, 1988 which purported to embody the complete agreement of services and accommodations to be furnished by Travel Selections at the Westin Kauai for the 1989 trip, which again was not signed by Mr. Biko.

Counsel's letter concluded:

> Based on the foregoing, UIC hereby requests the American Arbitration Association to dismiss this proceeding against UIC with prejudice. By such request UIC does not waive any of its rights to proceed against Westin Hotel Company for actual and punitive damages as a result of the institution of this proceeding.

The arbitrator subsequently issued his decision and award. In so doing, he made findings of fact and conclusions of law, expressly holding against the appellee on its two claims (a) that

there was not a contract to arbitrate or any contract at all for that matter with Westin Kauai and (b) that there was no personal jurisdiction over appellee because of a lack of contacts with Hawaii.

Appellant then moved the court below to confirm the award, and appellee opposed the same on the two "jurisdictional" grounds. The court below, without giving a reason for its ruling, denied the motion to confirm the award and this appeal followed.

Under HRS § 658–1, a provision in a written contract to settle by arbitration a controversy thereafter arising out of the contract, or the refusal to perform the whole, or any part thereof, is valid, enforceable, and irrevocable, save only upon such grounds as exist for the revocation of any contract.

HRS § 658–3 provides in part:

> A party aggrieved by the failure, neglect, or refusal of another to perform under an agreement in writing providing for arbitration, may apply to the circuit court for an order directing that the arbitration proceed in the manner provided for in the agreement. Five days' notice in writing of the application shall be served upon the party in default. Service thereof shall be made in the manner provided for service of a summons. The court shall hear the parties, and upon being satisfied that the making of the agreement or the failure to comply therewith is not in issue, the court hearing the application shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the agreement or the default is in issue, the court shall proceed summarily to the trial thereof.

Appellee contends that it was under no obligation to bring to the attention of the appellant, the arbitrator, or the American Arbitration Association its contention that there was no agreement for arbitration, that it could let the proceedings go forward, and not

raise that issue until there was a motion to confirm the award. As we have said before with respect to HRS Chapter 658:

> [T]he proclaimed public policy ... is to encourage arbitration as a means of settling differences and thereby avoid litigation.

*Gregg Kendall & Assoc., Inc. v. Kauhi*, 53 Haw. 88, 93, 488 P.2d 136, 140 (1971). As we noted in *Swinerton*, on a motion to compel arbitration, a decision by the court either way is appealable. The question we are presented with is whether a party, faced with a properly made demand for arbitration, based on a purported written arbitration agreement, must, under HRS § 658–3, seasonably raise the claim of a lack of a contract for arbitration when the demand is made upon the party, or whether the party can stand mute, permit the arbitration proceedings to go forward and raise the issue when there is a motion to confirm the award.

We hold that the public policy of encouraging arbitration, and of simplifying proceedings, requires a party, properly notified of a demand, based on a written arbitration provision, for arbitration of an issue, which it does not believe to be arbitrable, to seasonably make its contention of non–arbitrability known to the other party, so that the party may have the opportunity of proceeding in accordance with HRS § 658–3, before incurring the expense and delay of the arbitration proceedings.

The claim of non–arbitrability along with the claim of lack of personal jurisdiction was first raised by appellee in attorney Stepanian's letter responding to the request to submit evidence. Evidence on the issue of whether or not there was a contract for arbitration was submitted with that letter. The letter requested that the arbitrator dismiss the proceedings *with prejudice*. The arbitrator, obviously believing that the letter had submitted the issues of arbitrability and personal jurisdiction to him, proceeded to rule upon them, and appellant argues that the letter constituted a submission by appellee of those issues to the arbitrator.

As we have pointed out, the letter asked for a dismissal of the arbitration proceedings *with prejudice* and provided that appellee was not waiving its rights to proceed against appellant for actual and punitive damages as a result of the institution of the proceedings. With respect to the issue of arbitrability, the letter was not, in the circumstances of this case, a seasonable raising of the issue. With respect to the issue of personal jurisdiction, had there been no request that the arbitrator dismiss the case *with prejudice*, it would not have been submitted and could have been raised on the motion to confirm.

We agree with the appellant, and the arbitrator, that the last paragraph of that letter did submit to the arbitrator, for decision, the two issues of arbitrability and personal jurisdiction because a dismissal of the proceedings *with prejudice* was sought.

We further agree with appellant that the two issues having been submitted to the arbitrator, the circuit court had no power to do anything other than confirm the arbitrator's award, since no motion to vacate, modify or correct the award as provided in HRS §§ 658–9 and –10 was filed.

We therefore reverse the order denying the motion to confirm the award, and remand the case for an entry of a judgment in favor of the appellant in accordance with the terms of the arbitration award as provided in HRS § 658–8.

*Micheal C. Webb* for appellant.
*Michael R. Marsh* (*Wesley W. Ichida* and *Lyle M. Ishida* with him on the brief; Case & Lynch, of counsel) for appellee.

DISSENTING OPINION OF MOON, J.

I respectfully dissent.

I believe that the circuit court properly refused to confirm the award of $164,058.23 plus interest, based on appellee Universal Investment, Inc.'s (Universal) contention that there was no arbitration agreement. I would affirm the denial of confirmation and remand for a trial on the issue of whether there was an enforceable contract between the parties that included an arbitration provision.

In this case, Universal, a Pennsylvania corporation, denies the existence of a contract with appellant Westin Hotel Company (Westin). Universal's sole business contact with Hawaii was a 1988 vacation trip for its sales staff at the Westin Kauai Hotel based on a 1987 sales incentive program. As a result of a decline in business in 1988, Universal claims it could not afford to implement the same incentive program in 1989. Universal denies authorizing Mitzi Calder of Travel Selections, Inc., a Texas corporation, to contract with Westin for hotel accommodations in 1989.

Consistent with its position of the non–existence of a contract with Westin, Universal refused to appear at the arbitration hearing. According to the majority, "[u]nder HRS § 658–3 [the issue of arbitrability] could, and should, have been raised by the appellee [Universal] when the demand for arbitration was first made." I fail to see how HRS § 658–3 supports this conclusion. As noted by the majority, the statute provides that "[a] party aggrieved by the failure, neglect, or refusal of another to perform under an agreement in writing providing for arbitration, may apply to the circuit court for an order directing that the arbitration proceed in the manner provided for in the agreement." Under the plain language of the statute, Universal had no standing to institute an action in circuit court. Universal was not aggrieved by any party's failure, neglect, or refusal to perform under an arbitration agreement. Westin was so aggrieved, yet did not apply to the circuit court.

Although the written order being appealed did not include the trial court's reasons for denying the motion to confirm the arbitra-

tion award, the minute order entered on May 16, 1990, states as follows:

> Motion denied. Defendant [Universal] has timely interposed its objection to the arbitration proceeding by opposing the motion herein. As such, *the court must make a preliminary decision regarding the validity of the arbitration "agreement" per HRS section 658–3.* Defendant has not waived its right to contest the "agreement", since defendant has clearly objected to the arbitration from its commencement.

(Emphasis added.) The trial court specifically found that Universal had timely raised the issue of arbitrability by opposing the motion to confirm. More importantly, the court concluded that a judicial determination regarding the validity of the alleged arbitration agreement was necessary before it could confirm the award. In conformity with the language of HRS § 658–3, the court properly denied the motion.

Westin's counsel represented at oral argument that Westin "had no idea" why Universal did not appear at the arbitration hearing. However, even before it initiated the arbitration proceedings, Westin knew that Universal was contesting the existence of the contract itself, of which the arbitration clause in question was a part. Westin's own memorandum in support of its motion to confirm the arbitration award asserts in its chronology of events that "Westin made demand on Universal, pursuant to the cancellation and liquidated damages provision in the Group Agreement [for hotel accommodations] and Universal refused to pay Westin the liquidated damages amount, *alleging that it had no agreement with Westin* and therefore was not liable." (Emphasis added.) Westin further states that it then proceeded to initiate arbitration proceedings. Thus, Westin was well aware of the reason for Universal's non–appearance at the arbitration hearing. It is ironic that in this case the majority should cite HRS § 658–3 to impose an

obligation on Universal that the statute itself imposes on Westin, the party seeking to enforce the alleged arbitration agreement. Although it may have been preferable for Universal to have responded to the arbitration hearing notice, there was no legal requirement to do so.

The majority criticizes Universal's "tactics," yet fails to recognize Westin's own attempts to circumvent the clear requirement of HRS § 658–3 in order to have its claim against an out–of–state company resolved at the least expense to Westin. The majority here not only misinterprets HRS § 658–3, but attempts to justify its position by elevating the public policy of encouraging arbitration over other important policies, such as creating a favorable environment for out–of–state businesses here in Hawaii. HRS § 658–3 contemplates that the party seeking to compel arbitration apply for such an order from the circuit court, a requirement which clearly would not discourage arbitration. The majority's new rule will, in my view, have a serious adverse effect on out–of–state companies' decisions to do business in or to visit Hawaii.

Although this court has not been faced with the issues of timeliness in raising the issue of arbitrability and whether arbitrability is a question solely reserved for judicial determination, they have been addressed by the Michigan Supreme Court in *Arrow Overall Supply Co. v. Peloquin Enterprises*, 414 Mich. 95, 323 N.W.2d 1 (1982). The facts of *Arrow* are almost identical to the facts of the present case. In *Arrow*, plaintiff sought to confirm an award entered by the American Arbitration Association. Defendant filed opposition in the circuit court denying that there was a valid agreement to arbitrate. Defendant had not appeared at the arbitration hearing even though it had received notice. The circuit court confirmed the award, and the court of appeals affirmed, concluding that defendant had not timely raised the invalidity of the arbitration agreement. The Michigan Supreme Court reversed, finding that defendant's raising of the issue of arbitrability at the hearing on the

motion to confirm the award was timely. The supreme court further stated that "[w]henever the jurisdiction of an arbitrator is questioned, it must be determined in order to make an award on arbitration binding. The existence of a contract to arbitrate and the enforceability of its terms is a judicial question which cannot be decided by an arbitrator." *Arrow*, 414 Mich. at 98–99, 323 N.W.2d at 2–3 (footnotes omitted); *see also* 5 Am. Jur. 2d *Arbitration and Award* § 15 (1962).

The Michigan arbitration statute is similar to Hawaii's in that it provides that a party may apply to the court to compel arbitration where a question is raised as to the existence or validity of an agreement to arbitrate. Unlike Hawaii's arbitration statute, the Michigan statute also provides for application to the court to stay any arbitration proceeding. *See Arrow*, 414 Mich. at 100, 323 N.W.2d at 3; HRS § 658–3. With respect to its arbitration statute, the Michigan Supreme Court commented as follows:

> If plaintiff proceeds without moving the court to compel arbitration, he risks spending time, money and effort, only to have an award vacated or held unenforceable on a later finding that no arbitration agreement was in existence. If a party denying the existence of an agreement fails to seek a stay of the proceedings, he risks a later judicial determination that there was a contract requiring arbitration and of being obligated to the award though he did not participate in the proceedings.

*Arrow*, 414 Mich. at 100, 323 N.W.2d at 3. The *Arrow* court also concluded that the burden to obtain a preliminary judicial determination should be on the party seeking to compel arbitration. The court therefore held that notice of an arbitration imposes no duty on someone who claims the non–existence of an agreement to arbitrate to commence any legal proceedings.

According to the majority, Universal's letter of February 22, 1990 to the arbitrator "was not . . . a seasonable raising of the issue

[of arbitrability]." As noted previously, Westin essentially admits that prior to instituting arbitration proceedings, it knew that Universal was taking the position that there was no agreement. Even if Westin's knowledge of Universal's position is disregarded, Universal's letter, which was solicited by the arbitrator, was submitted within the prescribed time. That letter clearly contested the existence of an agreement to arbitrate. Thus, before the arbitration award was made, the claim of non–arbitrability had been raised. Such claim should have, at that point, been submitted for judicial determination.

The second issue raised by Universal is that the arbitrator did not have personal jurisdiction over it. In finding that the arbitrator had personal jurisdiction, the majority relies on Universal's request that the arbitration proceedings be dismissed *with prejudice*. The majority states that "had there been no request that the arbitrator dismiss the case *with prejudice* it would not have been submitted and could have been raised on the motion to confirm." The majority then concludes that Universal "did submit to the arbitrator, for decision, the two issues of arbitrability, and personal jurisdiction because a dismissal of the proceedings *with prejudice* was sought." For the majority to hold that an out–of–state corporation submits to an arbitrator's jurisdiction merely by the inclusion of two words in a letter is wholly untenable. This is especially true in this case where, in the same letter, Universal clearly states that its response "is to contest the institution of this proceeding and in no way is an admission of the jurisdiction of the American Arbitration Association with respect thereto." While I am in total agreement with the public policy of encouraging arbitration, I see no basis to burden out–of–state businesses, which make substantial contributions to Hawaii's economy, with the expense of returning to Hawaii to contest arbitrability before an arbitrator who obviously has no jurisdiction to decide this preliminary issue.

Based on the above, I would remand this case for a judicial determination of the existence of an agreement to arbitrate and the enforceability of its terms. As the court in *Arrow* reasoned, if the court determines that no arbitration agreement existed, then the award must be vacated and held unenforceable. However, if the court below finds that there was a valid agreement to arbitrate, then Universal would be bound by the arbitration award and the award may be confirmed.