889 P.2d 58

**BATEMAN CONSTRUCTION, INC.,**
Claimant/Counter–Respondent–
Appellee,

v.

**HAITSUKA BROTHERS, LIMITED,**
Respondent/Counter–Claimant–
Appellant.

No. 17745.

Supreme Court of Hawai'i.

Jan. 9, 1995.

Reconsideration Denied Feb. 24, 1995.

Dennis W. King (William J. Deeley, with him on the briefs; of Deeley, King & Pang), Honolulu, for respondent/counter-claimant-appellant.

Edward J. Bybee of Bybee, Chang & Rulon, on the briefs, Honolulu, for claimant/counter-respondent-appellee.

Bert T. Kobayashi, Jr. and Joseph N. Kiyose of Kobayashi, Sugita & Goda, Honolulu, substituted as counsel for claimant/counter-respondent-appellee after briefing.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

To capsulize the intent behind Hawai'i Revised Statutes (HRS) Chapter 658, *Arbitration and Awards*, we have stated that by agreeing to arbitration "it was [the arbitrator's] judgment [the parties] bargained for, not a court's." *Morrison–Knudsen Co. v. Makahuena Corp.*, 66 Haw. 663, 670, 675 P.2d 760, 766 (1983). In this arbitration matter, Respondent/Counter–Claimant–Appellant Haitsuka Brothers, Limited (Haitsuka) and Claimant/Counter–Respondent–Appellee Bateman Construction, Inc., (Bateman) submitted contract disputes to the American Arbitration Association (AAA) for arbitration. After the arbitration commenced and three pre-hearing conferences were held, the arbitrator ruled upon and rejected Haitsuka's proposed arbitration schedule. Haitsuka then filed an action with the circuit court requesting orders (1) to postpone an already ongoing arbitration and (2) to consolidate two other ongoing arbitrations. The circuit court refused because it lacked subject matter jurisdiction. We agree and affirm the circuit court's order denying Haitsuka's motion to postpone arbitration and to consolidate all four arbitrations.

## I. *FACTS*

Haitsuka, a general contractor, entered into four different subcontract agreements with Bateman. Under the contracts, Bateman agreed to perform construction work on four projects located in Salt Lake, Mililani, Waahila, and on the Hickam Air Force Base.

All four contracts contained the following arbitration clause:

> ELEVENTH: If at any time any controversy should arise between the Contractor and the Subcontractor regarding anything pertaining to this agreement ..., then the written orders of the Contractor shall be followed and said controversy shall be decided by arbitration *upon completion of the work.*

(Emphasis added.)

Haitsuka and Bateman proceeded to perform the above contracts when disputes developed on the Salt Lake and Mililani projects. Pursuant to the arbitration agreement, Bateman filed two separate demands for arbitration—one for each contract. On the Salt Lake contract, Bateman claimed damages for differing subsurface site conditions, which consisted of hard rock instead of easily removable soil. On the Mililani contract, Bateman claimed damages for work performed beyond the scope of the contract and resulting construction delays. Haitsuka, in turn, filed two separate answers denying any and all liability to Bateman and included two separate counterclaims alleging, *inter alia,* multiple breaches of the Salt Lake and Mililani contracts.

Before the arbitration process began, Bateman and Haitsuka stipulated: (1) that Bateman's claim and Haitsuka's counterclaims regarding the Salt Lake contract should be arbitrated; (2) that the above dispute should be decided in the tribunal of the AAA and under its rules; and (3) that William A. Stricklin would be appointed as the AAA Arbitrator.

Three pre-hearing conferences were scheduled. At the first pre-hearing conference on November 9, 1993, Bateman asked the Arbitrator to schedule arbitration hearings on the Salt Lake controversy as soon as possible. Haitsuka, on the other hand, asked the Arbitrator to postpone hearings until the end of June 1994.

Haitsuka argued that the claims and counterclaims were not presently "arbitrable" because creditors and suppliers were still filing claims against Haitsuka for monies that Bateman failed to pay. Haitsuka asserted, among other reasons, that it could not present a defense or quantify its counterclaims until the end of June 1994, following the deadline for suppliers and subcontractors to file their claims on the Salt Lake project.

The Arbitrator decided that " 'timeliness', 'ripeness', and/or 'arbitrability' " were issues for arbitration. The Arbitrator determined that Haitsuka's challenge was not substantive but procedural; therefore, he found that the scheduling of the initial hearings was a procedural issue to be determined by him rather than by the courts. Despite Haitsuka's claims to the contrary, the Arbitrator concluded that Bateman's claim was ripe for

arbitration and scheduled the initial hearings for December 1993 and January 1994.

In a letter dated November 23, 1993, Bateman asked the Arbitrator to consolidate the Hickam and Waahila contracts with the Salt Lake arbitration. Bateman argued that consolidation of these three projects into a single hearing would be more efficient because common questions of law and fact existed in all three projects. However, Bateman stated that the Mililani contract should not be consolidated because the questions of law and fact were different. Bateman explained that while construction on the other projects was still ongoing, construction on the Mililani contract was complete.

In a response letter dated November 29, 1993, Haitsuka argued that the Hickam and Waahila contracts should not be consolidated into a single hearing with the Salt Lake contract. Haitsuka asserted that each contract was "unique" and that consolidation was inappropriate. Haitsuka, however, proposed that the Arbitrator could possibly consolidate all four projects into a single arbitration after June 1994 when all claims against Bateman and Haitsuka would toll. Haitsuka maintained that arbitration after June 1994 would be the best way to provide a full and fair hearing on all damages between the parties.

On December 13, 1993, the Arbitrator granted Bateman's request to consolidate the Salt Lake, Hickam, and Waahila contracts into a single hearing. As a result, the Arbitrator scheduled all three cases to be arbitrated at once with hearings to start in December 1993.

Meanwhile, Haitsuka filed a motion in the circuit court to postpone the December hearing and to consolidate all four arbitrations into a single hearing. Haitsuka contended that: (1) the circuit court should postpone the December hearing pursuant to HRS § 658–9[1] because Haitsuka presented good cause to postpone; and (2) the court then should consolidate all four arbitrations because no prejudice existed to Bateman.

Bateman subsequently filed a memorandum opposing Haitsuka's motion. Bateman contended that this motion should be denied based on principles of estoppel or *res judicata* since Haitsuka already submitted the issues of scheduling and consolidation to the Arbitrator and lost. In addition, Bateman argued that circuit court lacked jurisdiction to intervene in an uncompleted arbitration.

On December 14, 1993, the circuit court held a hearing on the motion to postpone and consolidate. On the postponement issue, Haitsuka argued that: (1) the court had jurisdiction pursuant to HRS § 658–9 as well as § 658–3;[2] (2) the court had to postpone the December hearing because the arbitration provisions in all three contracts prohibited arbitration until the work was completed; and (3) due process required the court to postpone any hearing until Haitsuka could present its defenses or counterclaims on the project. On the consolidation issue, Haitsuka argued that if the arbitration were postponed, the court should consolidate all four projects into a single hearing because of common questions of law and fact.

1. HRS § 658–9 (1985) provides in relevant part:
[T]he court may make an order vacating the award, upon the application of any party to the arbitration:
    (1) Where the award was procured by corruption, fraud, or undue means;
    (2) Where there was evident partiality or corruption in the arbitrators, or any of them;
    (3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced;
    (4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award,

upon the subject matter submitted, was not made.

2. HRS § 658–3 (1985) provides the following:

A party aggrieved by the failure, neglect, or refusal of another to perform under an agreement in writing providing for arbitration, may apply to the circuit court for an order directing that the arbitration proceed in the manner provided for in the agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement or the failure to comply therewith is not in issue, the court hearing the application shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

Bateman, on the other hand, argued that the court lacked any statutory authority to interfere with an ongoing arbitration under HRS § 658–3. Bateman contended that when both parties submitted and argued the scheduling and the consolidation issues before the Arbitrator, the circuit court lost its jurisdiction.

On January 11, 1994, the circuit court issued an order denying Haitsuka's motion to postpone arbitration and to consolidate all four arbitrations. Haitsuka, thereafter, filed a timely notice of appeal.

## II. *STANDARD OF REVIEW*

Bateman premised its argument opposing the motion primarily on the circuit court's lack of subject matter jurisdiction.

■ We have stated that "[a] trial court's dismissal for lack of subject matter jurisdiction is a question of law, reviewable *de novo.*" *Norris v. Hawaiian Airlines, Inc.,* 74 Haw. 235, 239, 842 P.2d 634, 637 (1992), *aff'd,* ── U.S. ──, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). Thus, we review *de novo* the court's order denying Haitsuka's motion to postpone arbitration and to consolidate all four disputes into a single arbitration hearing.

## III. *DISCUSSION*

Haitsuka contends: (1) that the circuit court had jurisdiction to postpone arbitration pursuant to HRS §§ 658–3 and –9; and (2) that the circuit court had jurisdiction to consolidate all four arbitrations because common questions of law and fact existed in all four disputes. We disagree with both contentions.

### A. *Policy Behind HRS Chapter 658*

■ This court has long recognized the strong public policy supporting Hawai'i's arbitration statutes as codified in HRS Chapter 658. We have stated that "[t]he proclaimed public policy ... is to encourage arbitration as a means of settling differences and thereby avoid litigation." *Westin Hotel Co. v. Universal Inv., Inc.,* 72 Haw. 178, 183, 811 P.2d 467, 469–70 (1991) (quoting *Gregg Kendall & Assoc., Inc. v. Kauhi,* 53 Haw. 88, 93,

488 P.2d 136, 140 (1971)), *reconsideration denied,* 72 Haw. 617, 841 P.2d 1074 (1991). If there is an enforceable agreement to arbitrate, the court's power is limited by HRS Chapter 658. The court cannot act except as allowed by that Chapter. The court can compel the parties to arbitrate under HRS § 658–3. It can name the arbitrator under HRS § 658–4. It can compel witnesses to attend under HRS § 658–7. In addition, the court can confirm, modify, or vacate a final award under HRS §§ 658–8, –9, and –10. However, under HRS § 658–5, the court cannot try or decide issues or controversies that are referred to or are referable to the arbitrator. Thus, we must reconcile all of Haitsuka's arguments based on HRS Chapter 658 with Hawai'i's strong public policy encouraging arbitration.

### B. *Issues Referred To Arbitration*

■ In the instant case, Haitsuka contends that the circuit court had jurisdiction to postpone the December arbitration and to consolidate all four arbitrations. However, HRS § 658–5 provides:

**No trial if issue referable to arbitration.** If any action or proceeding is brought upon any issue referable to arbitration under an agreement in writing, the circuit court, upon being satisfied that the issue involved in the action or proceeding is referable to arbitration under such an agreement in writing, shall stay the trial of the action or proceeding until the arbitration has been had in accordance with the terms of the agreement, provided the applicant for the stay is not in default in proceeding with the arbitration.

HRS § 658–5 (1985) (bold in original). Reading HRS § 658–5 in light of the public policy encouraging arbitration, we have held that a trial court must stay actions referable to arbitration if a party invokes his or her right to arbitrate such actions. *Association Owner of Kukui Plaza v. Swinerton & Walberg Co.,* 68 Haw. 98, 705 P.2d 28 (1985).

In the present case, both Haitsuka and Bateman submitted the scheduling/arbitrability and the consolidation issues to arbitration. Indeed, Haitsuka attended several pre-con-

ference hearings and thoroughly argued the above issues before the arbitrator—thereby consenting to submit the scheduling/arbitrability and consolidation issues to arbitration.

█ As a general rule, the courts should determine whether a dispute is subject to arbitration. In *Koolau Radiology, Inc. v. Queen's Medical Center,* 73 Haw. 433, 834 P.2d 1294 (1992), we stated:

> "The existence of a valid agreement to arbitrate and the scope of that arbitration are issues that a court *must* decide." 6A *CORBIN ON CONTRACTS* § 1444A (1962). In *Beclar Corp. v. Young,* 7 Haw. App. 183, 750 P.2d 934 (1988), the Intermediate Court of Appeals held that when "[t]he [arbitration clause] is clear and unambiguous .... its interpretation is a question of law which *may* be made by [the appellate] court.... Consequently, we are free to interpret the [arbitration clause] and apply the correct law to its enforcement." *Id.* at 190, 750 P.2d at 938–39 (citations omitted).

*Koolau,* 73 Haw. at 447, 834 P.2d at 1301 (1992) (emphasis added) (alterations in original). In the present case, the existence of the agreement to arbitrate is not in dispute. However, Haitsuka, after an adverse ruling from the arbitrator, argues that the arbitration agreement does not permit the controversy to be decided until completion of the construction work. Thus, we are left with the question whether the ripeness issue, *i.e.,* the scheduling of hearings is arbitrable. Given the language in *Koolau,* it is not clear whether courts "must" or "may" decide the issue of arbitrability.

Because the pertinent language of HRS §§ 658–3, –5, and –9 is virtually identical to the language of the federal arbitration statute, 9 U.S.C. §§ 3, 4, and 10 (1988), we review federal authority for guidance. *See Koolau Radiology, Inc. v. Queen's Medical Ctr.,* 73 Haw. 433, 444, 834 P.2d 1294, 1300 (1992) (relying on federal authority given the similarities between HRS § 658–3 and 9 U.S.C. § 4). Specifically, we look to federal authority to determine whether the issue of arbitrability is within the sole jurisdiction of the courts or whether parties may vest authority to an arbitrator to determine the issue of arbitrability.

The United States Supreme Court, in *AT & T Tech., Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) reaffirmed that the question of arbitrability is usually an issue to be decided by the courts, "[u]nless the parties clearly and unmistakably provide otherwise[.]" *FSC Securities Corp. v. Freel,* 14 F.3d 1310, 1312 (8th Cir.1994). *See also Johnson v. United Food and Commercial Workers, Int'l. Union Local No. 23,* 828 F.2d 961 (3d Cir.1987) (holding that questions ordinarily reserved for courts may generally be submitted instead to binding arbitration if parties consent).

█ In the present case, Haitsuka and Bateman clearly and unmistakably submitted the issues of scheduling/arbitrability and consolidation to the Arbitrator. Given the authority to rule on these issues by the parties, the Arbitrator found Bateman's claim ripe for arbitration. Thus, we hold that because the parties referred the above issues to arbitration, the circuit court lost jurisdiction to hear Haitsuka's motion pursuant to HRS § 658–5.[3] After all, "it was [the arbitrator's]

---

**3.** Haitsuka contends that the circuit court also deprived Haitsuka of due process by failing to postpone the December arbitration until it could fully calculate its damages and counterclaims. However, we need not address this issue of procedural due process because the arbitration is still ongoing and Haitsuka has not yet been deprived of any property interest.

Haitsuka also contends that the circuit court had jurisdiction to postpone the arbitration pursuant to HRS § 658 because, according to the terms of the agreement, controversies "shall be decided by arbitration upon completion of the work." Because the work on all

three projects were still incomplete, Haitsuka argues that the controversies in question were not arbitrable. In *Westin Hotel,* we held that a party served with a demand for arbitration should seasonably raise the issue of non-arbitrability pursuant to HRS § 658–3 when the demand for arbitration was first made. *Westin Hotel,* 72 Haw. at 179, 811 P.2d at 468. Because Haitsuka fully argued the issue of ripeness and waited for the Arbitrator's decision before claiming that the controversies were not arbitrable, Haitsuka's claim was not seasonable. Therefore, the circuit court had no jurisdiction to grant Haitsuka's motion to postpone

judgment they had bargained for, not a court's." *Morrison–Knudsen Co.*, 66 Haw. at 670, 675 P.2d at 766 (1983).

### C. *Motion To Consolidate*

■ Haitsuka contends that the circuit court had jurisdiction to consolidate all four arbitrations because common questions of law and fact existed in all four contract disputes. Haitsuka cites no Hawai'i cases or statutes. Haitsuka relies completely on federal law and cases from other jurisdictions to support its argument. Given the absence of Hawai'i law regarding the scope of the trial court's role when faced with a motion to consolidate arbitration, we look to federal authority for guidance. *See Koolau*, 73 Haw. at 444, 834 P.2d at 1300.

Haitsuka argues that the circuit court should consolidate cases where the arbitration agreements are silent on consolidation if: (1) the agreements are both identical; (2) the arbitrations present common questions of law and fact; and (3) the danger of conflicting findings and awards could be avoided by consolidation. Haitsuka cites *Hoover Group Inc. v. Probala & Assocs.*, 710 F.Supp. 677 (N.D.Ohio, 1989), as an example of the above proposition.

Haitsuka's reliance on *Hoover* is misplaced. *American Centennial Insurance Company v. National Casualty Company*, 951 F.2d 107 (6th Cir.1991), held that the district court lacked the authority to consolidate arbitration proceedings, over objection of a party to the arbitration agreement, when the agreement was silent regarding consolidation. Indeed, in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–21, 105 S.Ct. 1238, 1242–43, 84 L.Ed.2d 158 (1985), the Supreme Court stated:

> The legislative history of the [Federal Arbitration] Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made

agreements to arbitrate. We therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims. The Act, after all, does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements.... [P]assage of the Act was motivated, first and foremost, by congressional desire to enforce agreements into which parties had entered, and we must not overlook this principal objective when construing the statute, or allow the fortuitous impact of the Act on efficient dispute resolution to overshadow the underlying motivation....

> We therefore are not persuaded by the argument that the conflict between two goals of the Arbitration Act—enforcement of private agreements and encouragement of efficient and speedy dispute resolution—must be resolved in favor of the latter in order to realize the intent of the drafters. The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce the agreements to arbitrate, even if the result is "piecemeal" litigation, at least absent a countervailing policy manifested in another federal statute.

Like the history of the Federal Arbitration Act, the legislative history of HRS Chapter 658 establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. *Yoshioka v. E.F. Hutton & Co.*, 2 Haw.App. 125, 127, 626 P.2d 1186, 1187 (1981).

In the present case, all four contracts contain separate arbitration agreements. The language in each arbitration provision is silent as to consolidation. The plain language

---

the Salt Lake arbitration pursuant to HRS § 658–3.

In addition, Haitsuka claims that the circuit court had jurisdiction to postpone the arbitration pursuant to HRS § 658–9. However, HRS § 658–9 applies only after the arbitrator

issues an arbitration award. Because no award had been issued and because Bateman and Haitsuka had yet to present their cases, the circuit court had neither the power nor jurisdiction to postpone the Salt Lake arbitration pursuant to HRS § 658–9.

of each contract is clear; Haitsuka and Bateman did not originally intend to consolidate all four cases into a single hearing. Thus, in light of the legislative intent of HRS Chapter 658, we hold that the circuit court had no jurisdiction to consolidate arbitrations where the arbitration agreements are silent as to consolidation.

## IV. *CONCLUSION*

For the reasons set forth above, the order of the circuit court is affirmed.