129 P.3d 1125

**Jeffrey Lloyd KIENKER and Janet Lee Kienker, Plaintiffs–Appellees/Cross– Appellees**

v.

**Danielle BAUER, Defendant– Appellee/Cross–Appellant**

and

**State of Hawai'i, Defendant– Appellant/Cross– Appellee**

and

**County of Hawai'i, Defendant.**

**No. 25856.**

Supreme Court of Hawai'i.

March 14, 2006.

---

Dorothy Sellers and Adina L.K. Cunningham, Deputy Attorneys General, on the briefs, for defendant-appellant/cross-appellee State of Hawaiʻi.

Kenneth A. Ross, Kailua-Kona, and Reginauld T. Harris, Honolulu,(Rush Moore Craven Sutton Morry and Beh, LLP), on the briefs, for defendant-appellee/cross-appellant Danielle Bauer.

Joseph P.H. Ahuna, Jr., Kaneohe, and John H.W. Yuen, on the briefs, for plaintiffs-appellees/cross-appellees.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that Hawaiʻi Revised Statutes (HRS) § 663–10.5 (Supp.2005),[1] which abolishes joint and several liability for government entities, did not supercede or impliedly repeal (1) HRS § 663–10.9(4) (Supp.2005),[2] which expressly allows for recovery of non-economic damages in motor vehicle accidents involving the maintenance and design of highways, or (2) HRS § 663–10.9(1), that provides for the recovery of economic damages against joint tortfeasors in actions involving injury or death to persons. In light of these premises, we affirm the May 12, 2003 final judgment of the circuit court of the

---

1. The text of Hawaiʻi Revised Statutes (HRS) § 663–10.5 (Supp.2005) is reproduced *infra*.

2. The relevant provisions of HRS § 663–10.9 (Supp.2005), subsections (1),(3), and (4), are reproduced *infra*.

third circuit (the court)[3] in which noneconomic damages were awarded to Plaintiffs–Appellees/Cross–Appellees Jeffrey Lloyd Kienker (Jeffrey) and Janet Lee Kienker [collectively, the Kienkers] against Defendant–Appellant/Cross–Appellee State of Hawai'i (the State) and Defendant–Appellee/Cross–Appellant Danielle Bauer (Bauer) as joint tortfeasors pursuant to HRS § 663–10.9(4). However, inasmuch as the court erred in failing to grant economic damages to the Kienkers as allowed under HRS § 663–10.9(1), we order that such economic damages be awarded. We also affirm the judgment insofar as it adjudged the State as 20% at fault and Bauer as 80% at fault in the subject motor vehicle accident.

## I.

On July 5, 1997, Jeffrey was driving northbound on Queen Kaahumanu Highway on the island of Hawai'i when Bauer, traveling southbound, struck Jeffrey head on. Immediately prior to the accident, there was a motor vehicle stopped in the southbound lane in which Bauer was traveling. This stationary vehicle was attempting to make a left turn onto the Police Station Access Road. Three to four other vehicles were stopped behind the left turning vehicle. The car in front of Bauer came to an abrupt halt. Bauer began to veer to the right, but finding the shoulder of the road blocked, swerved her automobile to the left, crossing the centerline of Queen Kaahumanu Highway and colliding with the vehicle driven by Jeffrey. The area of impact was 108 feet north of the intersection of the Police Station Access Road and Queen Kaahumanu Highway.

Queen Kaahumanu Highway is and was at the time of the accident a two-lane highway maintained by the State. The court found that prior to the accident involving Jeffrey, the intersection of Queen Kaahumanu High-

way and Police Station Access Road was operating at an overcapacity that hindered movement of vehicles because a left turn lane or other appropriate channelization was not provided. The court also found that prior to July 5, 1997, there had been an overall increase in traffic volume on Queen Kaahumanu Highway, as well as an increase in the number of left turns from the highway onto the Police Station Access Road. This increase resulted from development of facilities in the area served by the Road, including the construction of the police station in 1988 to 1989, expansion of an animal shelter, and development of a solid waste transfer station and recycling center.

## II.

■ The Kienkers filed suit on February 6, 1998, seeking economic[4] and noneconomic[5] damages. In addition to naming Bauer in the Complaint, the Kienkers also sued the State for negligently failing to install a left turn lane at the intersection.

### A.

On July 5, 2000, a jury-waived trial on the issue of liability was held. On September 14, 2000, the court entered the following relevant conclusions of law:

9. Defendant State's breach of its duty to reasonably design, operate and maintain the Queen K[aahumanu] Highway/police station access road intersection was a legal cause of plaintiffs' damage[s].

. . . .

14. Defendant Bauer was going about 60 miles per hour prior to braking. This was an unsafe speed for the conditions existing on the highway.

15. Defendant Bauer breached her duty of due care by being inattentive and

---

3. The Honorable Ronald Ibarra presided.

4. The phrase "economic damage" is not defined in HRS chapter 663. However, the legislative history to HRS § 663–10.9 indicates that "lost wages, medical expenses, lost future wages, and future medical expenses" are "economic damages." Hse. Stand. Comm. Rep. No. 4–86, in 1986 Special Session House Journal, at 43. This court has noted that economic damages are "oth-

erwise known as 'out-of-pocket' damages[.]" *Sprague v. California Pac. Bankers & Ins., Ltd.,* 102 Hawai'i 189, 201, 74 P.3d 12, 24 (2003).

5. HRS § 663–8.5 (1993) defines "noneconomic damages" as "damages for pain and suffering, mental anguish, disfigurement, loss of enjoyment of life, loss of consortium, and all other nonpecuniary losses or claims."

traveling at an unsafe speed causing her car to cross the center line and striking [Jeffrey's] car.

16. The negligence of Danielle Bauer was a legal cause of [Jeffrey's] injuries.

17. *Defendant State is 15% at fault for the July 5, 1997[] incident resulting in [the Kienkers'] damages.*

18. *Defendant Bauer is 85% at fault for the July 5, 1997[] incident resulting in [the Kienkers'] damages.*

(Emphases added.)

The Kienkers moved to amend these original conclusions of law, requesting the court to (1) alter its conclusion of law no. 17 to find the State 25% rather than 15%, at fault; and (2) add a conclusion that the State was jointly and severally liable for the Kienkers' noneconomic damages under HRS § 663–10.9(4)[6]. In support of their motion, the Kienkers argued that "there were at least two prior accidents which would be 'a prior occurrence under similar circumstances' under HRS § 663–10.9(4)." The Kienkers also contended that "other prior accidents at or near the police station intersection which would be 'generally similar to the instant case ... would give further notice to [the State] that the intersection presented a dangerous condition[,]' " and listed seven motor vehicle accidents occurring between May 24, 1990 and July 20, 1993. According to the Kienkers' highway and traffic engineering expert, the

majority of the intersection-related accidents occurred while traffic waited for a left turn by a vehicle to take place.

On March 6, 2001, the court granted in part the Kienkers' motion and amended its findings and conclusions to:

## AMENDED FINDINGS OF FACT

. . . .

42. There have been some prior accidents at and on the section of highway near the Queen K[aahumanu] and Police Access Road intersection. These accidents involved cars traveling south and being rear-ended while stopped.

42A. *On February 12, 1992, there was a similar accident located 281 feet North of Kealakehe Police Station. ...*

42B. *The February 12, 1992 accident gave the State reasonable prior notice of a prior occurrence under similar circumstances to the accident.*

42C. *The other rear-end collisions also gave the State reasonable notice of prior occurrences.*

43. *Accident history is not the only factor to be considered* when contemplating whether or not to install a left-turn lane at an intersection.

44. *In addition to accident history, the State also had notice of problems existing at the intersection of Queen K[aahumanu]*

---

**6.** HRS § 663–10.9 (Supp.2005) provides for the abolition of joint and several liability for joint tortfeasors except under certain circumstances as it states in relevant part:

(1) *For the recovery of economic damages against joint tortfeasors in actions involving injury or death to persons;*

. . . .

(3) For the recovery of noneconomic damages in actions, other than those enumerated in paragraph (2), involving injury or death to persons against those tortfeasors whose individual degree of negligence is found to be twenty-five per cent or more under section 663–31. Where a tortfeasor's degree of negligence is less than twenty-five per cent, then the amount recoverable against that tortfeasor for noneconomic damages shall be in direct proportion to the degree of negligence assigned; and

(4) *For recovery of noneconomic damages in motor vehicle accidents involving tort actions relating to the maintenance and design of high-*

*ways* including actions involving guardrails, utility poles, street and directional signs, and any other highway-related device *upon a showing that the affected joint tortfeasor was given reasonable prior notice of a prior occurrence under similar circumstances to the occurrence* upon which the tort claim is based. In actions in which the affected joint tortfeasor has not been shown to have had such reasonable prior notice, the recovery of noneconomic damages shall be as provided in paragraph (3).

(Emphases added.)

Paragraph (2) of HRS § 663–10.9 refers to the liability of joint tortfeasors in intentional torts, environmental pollution, toxic and asbestos torts, torts involving aircraft accidents, strict and products liability torts, and torts relating to motor vehicle accidents not falling within subsection (4), all of which are not relevant to the instant case. Also of no import to this case is HRS § 663–31 (1993), which pertains to contributory and comparative negligence.

*Highway and the police station access road by means of its representatives attending meetings of the Kona Traffic Safety Committee.*

. . . .

46. Concerns with respect to the intersection were expressed to State officials by the Kona Traffic Safety Committee in *1995, 1996 and 1997.*

. . . .

48. *After* the Kona Traffic Safety Committee expressed its concerns and recommendations to the State officials nothing was done to correct problems with the intersection.

49. The dangerousness and defective condition of the intersection *should have been known to the State based on the combination of the increase in traffic volume, the development of the area served by the police station access road, prior accidents and the queuing condition at the intersection.*

(Emphases added.) No findings were made with respect to the State's liability for economic damages.

## AMENDED CONCLUSIONS OF LAW

. . . .

5. The failure of the State to correct the defective and dangerous condition prior to July 5, 1997, constituted a breach of duty by the State.

6. The State was negligent in its failure to correct the defective and/or dangerous condition at the Queen K[aahumanu] Highway/police station access road intersection.

7. *Defendant State had notice of the defective and dangerous condition prior to the accident of July 5, 1997.*

. . . .

17. *Defendant State is 20% at fault for the July 5, 1997[ ] incident resulting in [the Kienkers'] damages.*

18. Defendant Bauer is 80% at fault for the July 5, 1997[ ] incident resulting in [the Kienkers'] damages.

. . . .

20. *[HRS] Section 663–10.9(4) provides that:* "Abolition of joint and several liability; exceptions. *Joint and several liability for joint tortfeasors . . . is abolished except in the following circumstances:* (4)*[f]or recovery of noneconomic damages in motor vehicle accidents* involving tort actions relating to the maintenance and design of highways . . . *upon a showing that the affected joint tortfeasor was given reasonable prior notice of a prior occurrence upon which the tort claim is based. . . .*"

21. Since Defendant State had notice of a similar previous accident, [the] *State is jointly and severally liable with Defendant Bauer for noneconomic damages.*

(Emphases added.) The amended conclusions were silent with respect to the State's liability for economic damages.

The parties stipulated to the Kienkers' damages in the amount of $200,000 for special ("economic") damages and $900,000 for general ("noneconomic") damages. On November 26, 2001, the court entered the first version of the final judgment in favor of the Kienkers and against the State and Bauer, jointly and severally, for the Kienkers' total $1.1 million damages award.

## B.

On December 5, 2001, the State filed a motion for reconsideration of the November 26, 2001 judgment, arguing that HRS § 663–10.5 [7] had abolished the State's joint and several liability. On January 23, 2002, the court denied the motion for reconsideration,

---

**7.** HRS § 663–10.5 (Supp.2005) provides for the abolition of joint and several liability for government entities, in pertinent part, as follows:

> **Government entity as a tortfeasor; abolition of joint and several liability.** Notwithstanding sections 663–11 to 663–13, 663–16, 663–17, and section 663–31, in any case where a government entity is determined to be a tortfeasor along with one or more other tortfeasors, the

government entity shall be liable for no more than that percentage share of the damages attributable to the government entity. . . . .

Section 3 of Act 213, enacting HRS § 663–10.5, states that the statute *"[a]pplies only to causes of action based upon acts or omissions occurring on or after [June 22, 1994]."* 1994 Haw. Sess. L. Act 213, § 3 at 517 (emphasis added).

and in its order ruled that, "[HRS] Section 663–10.9(4) allows for joint and [several] liability where the affected joint tortfeasor was given reasonable prior notice of a prior occurrence under similar circumstances to the occurrence upon which the tort claim is based. [HRS] Section 663–10.5 did not supercede [HRS] Section 663–10.9(4)."

The State filed its notice of appeal on February 12, 2002. On April 19, 2002, during the pendency of the State's appeal, the State filed a motion for partial relief from judgment under Hawai'i Rules of Civil Procedure (HRCP) Rule 60 [8] ("Rule 60 motion"). According to the State, "the [f]inal [j]udgment [filed November 26, 2001] appears to have parted company with the [a]mended [findings of fact and conclusions of law filed March 6, 2001,] and to have unintentionally overstated the [State's] share of the stipulated damages award by imposing joint and several liability for both noneconomic and economic damages." The State argued that such discrepancy qualified as a "clerical mistake" under Rule 60(a) or as a "mistake" or "inadvertence" under Rule 60(b)(1). According to the State, the mistake or inadvertence had the effect of imposing additional liability of $160,000 in economic damages for which it was not liable.

On June 12, 2002, this court dismissed the State's appeal for failure to comply with HRCP Rule 58.[9] On June 25, 2002, the court subsequently granted the State's Rule 60 motion. Bauer moved the court to reconsider its order and, *inter alia*, argued that under HRS § 663–10.9(1) [10] the State also should be jointly and severally liable for the

**8.** HRCP Rule 60 (2006) supplies a mechanism for the correction of mistakes in judgments, orders, or other parts of the record as follows:

(a) **Clerical Mistakes.** Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the supreme court, and thereafter while the appeal is pending may be so corrected with leave of the supreme court.

(b) **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

**9.** HRCP Rule 58 (2006) states the rule for entry of judgments in the following manner:

Unless the court otherwise directs and subject to the provisions of Rule 54(b), judgment upon the verdict of a jury shall be entered forthwith by the clerk; but the court shall direct the appropriate judgment to be entered upon a special verdict or upon a general verdict accompanied by answers to interrogatories returned by a jury pursuant to Rule 49. When the court directs that a party recover only money or costs or that all relief be denied, the clerk shall enter judgment forthwith upon receipt by him of the direction; but when the court directs entry of judgment for other relief, the judge shall promptly settle or approve the form of the judgment and direct that it be entered by the clerk. The filing of the judgment in the office of the clerk constitutes the entry of the judgment; and the judgment is not effective before such entry. The entry of the judgment shall not be delayed for the taxing of costs. Every judgment shall be set forth on a separate document.

**10.** As noted before, HRS § 663–10.9(1) retains joint and several liability for joint tortfeasors where plaintiffs seek recovery of economic damages "in actions involving injury or death to persons[.]"

Kienkers' economic damages. The court denied Bauer's motion.

On August 22, 2002, the court entered a second version of the final judgment. That judgment, in pertinent part, stated as follows:

4. JUDGMENT IS HEREBY ENTERED in favor of [the Kienkers] and against [Bauer] and the State pursuant to the Amended Findings of Fact and Conclusions of Law and the Stipulation re: Damages as follows:

a. As to Counts I and III of the Complaint, [Bauer] is jointly and severally liable for [the Kienkers'] past and future general damages totaling $900,000 ("noneconomic damages"), and for [the Kienkers'] past and future special damages totaling $200,000 ("economic damages");

b. As to Counts II and III of the Complaint, the State is:

i. *Jointly and severally liable for [the Kienkers'] noneconomic damages totaling $900,000;* and

ii. *Liable for its percentage share of the [Kienkers'] economic damages (20%, or $40,000).*

(Emphases added.) The State moved the court to reconsider, but the court denied the State's motion on September 19, 2002. On October 16, 2002, the State filed a second appeal based on the August 22, 2002 judgment. This second appeal was also dismissed by this court because the August 22, 2002 judgment did not comply with the requirements of HRCP Rule 58.

On May 12, 2003, the court entered its third and final version of the judgment. That judgment mirrored the second judgment with regard to the apportionment of damages. On May 27, 2003, the State filed a

notice of appeal. Bauer filed her notice of cross-appeal on June 5, 2003.

### III.

#### A.

On appeal, the State first argues that the court erred in interpreting HRS § 663–10.9(4) as authorizing joint and several liability against the State because HRS § 663–10.5 abolishes joint and several liability for all government entities.[11] Secondly, the State argues that the court abused its discretion when it amended conclusion no. 17 on March 6, 2001, and increased the percentage of fault attributed to the State from 15% to 20%. The court amended conclusion no. 17 after making additional findings that indicate the State had prior notice of the dangerous or defective conditions existing prior to the incident at issue.

In response, Bauer argues that (1) HRS § 663–10.5 does not insulate the State from joint and several liability because the State's negligent acts occurred prior to June 22, 1994, the effective date of HRS § 663–10.5; (2) HRS § 663–10.5 does not supercede HRS § 663–10.9(4); and (3) the State cannot satisfy the standard of review necessary for this court to overturn the court's findings on percentage of fault. The Kienkers argue that (1) conclusions nos. 17 and 21 are unchallenged conclusions which are binding on this court and that the State's appeal should therefore be dismissed; (2) the State's arguments on appeal should be stricken because the court ordered that presentation of arguments which could have been presented in earlier proceedings were precluded and the State had not availed itself of such presentation;[12] (3) HRS § 663–10.5 does not super-

---

**11.** The State maintains that the court made this error in (1) the May 12, 2003 final judgment, in which the court incorporated the amended findings and conclusions and determined the State jointly and severally liable for the Kienkers' noneconomic damages; (2) conclusion no. 21 of the March 6, 2001 amended findings and conclusions, holding the State jointly and severally liable for noneconomic damages; (3) the January 23, 2002 order denying the State's motion for reconsideration of the November 26, 2001 judgment, holding the State jointly and severally liable for all of the Kienkers' damages; and (4) the

September 19, 2002 order denying the State's motion for reconsideration of the August 22, 2002 judgment, holding the State jointly and severally liable for noneconomic damages under HRS § 663–10.9(4).

**12.** This argument consists of one paragraph and neither cites law nor contains cites to the record. The appellate courts are not obligated to search the record to crystallize the parties' arguments. *See Lanai Co., Inc. v. Land Use Comm'n,* 105 Hawai'i 296, 309 n. 31, 97 P.3d 372, 385 n. 31

cede HRS § 663–10.9(4); and (4) the State has admitted by its pleadings to be liable for 20% of the damages and, moreover, the court did not abuse its discretion in increasing the State's percentage of fault to 20%.

The State replies (1) that the nonretroactivity clause of HRS § 663–10.5 does not apply to this case and (2) that HRS § 663–10.5 controls in this case. The State requests that this court reverse the final judgment and remand the case with instructions for the court to enter a new judgment consistent with the holding that (1) under HRS § 663–10.5, the State is liable only for its percentage share of the Kienkers' noneconomic and economic damages; and (2) the State is 15%, not 20%, at fault.

### B.

On cross-appeal, Bauer argues that (1) the court was without jurisdiction to issue its June 25, 2002 order granting the State's Rule 60 motion, and, alternatively, the court abused its discretion in granting partial relief from judgment; (2) the court erred in its August 9, 2002 order denying Bauer's motion for reconsideration or clarification of the June 25, 2002 order granting the State's motion for partial relief from judgment; and (3) the court erred in its May 12, 2003 final judgment that exempted the State from joint and several liability for economic damages.

The State answers that (1) the court had jurisdiction to grant the State's Rule 60 motion; (2) the court did not err when it granted the State's motion pursuant to Rule 60(a) and (b); (3) HRS § 663–10.5 supersedes the common law; and (4) the court never ruled on whether HRS § 663–10.5 supercedes HRS 663–10.9(1).

In reply, Bauer argues that (1) the State failed to appeal the procedural basis for the court's rejection of its argument on HRS § 663–10.5 and the amended findings and conclusions satisfy HRCP Rule 52, and (2) the amendment of a judgment pursuant to HRCP Rule 60 requires a clear error. Bauer requests that this court (1) vacate the

court's June 25, 2002 order granting the State's Rule 60 motion; (2) vacate the court's August 9, 2002 order denying Bauer's motion for reconsideration or, in the alternative, clarification of order granting the State's Rule 60 motion; and (3) vacate the May 12, 2003 final judgment and remand it for amendment and reformation consistent with this court's holding, wherein Bauer asks that the final judgment be reformed to provide that the State is jointly and severally liable for the Kienkers' economic and noneconomic damages.

### IV.

This court views conclusions of law *de novo* under the "right [or] wrong" standard. *Roxas v. Marcos,* 89 Hawai'i 91, 115, 969 P.2d 1209, 1233 (1998) (reviewing conclusions of law *de novo* under the right or wrong standard); *State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (reviewing the interpretation of a statute *de novo* ). Findings of fact are reviewed under the clearly erroneous standard. *Child Support Enforcement Agency v. Roe,* 96 Hawai'i 1, 11, 25 P.3d 60, 70 (2001). "[A finding of fact] . . . is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made." *Id.* (quoting *In re Water Use Permit Applications,* 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000)).

### V.

As mentioned before, on March 6, 2001, the court amended its conclusions, including conclusion no. 17, which increased the State's fault from 15% to 20%, and conclusion no. 21, which held the State jointly and severally liable for the Kienkers' noneconomic damages. On January 23, 2002, the court had denied the State's motion for reconsideration on the basis that the State did not present new evidence or arguments that could not have been presented during the earlier pro-

---

(2004) (stating that "[t]his court is not obligated to sift through the voluminous record to verify an appellant's inadequately documented conten-

tions"). Accordingly, this argument is not considered.

ceeding. The Kienkers' position, then, is that the State would be barred from arguing that HRS § 663–10.5 abolished joint and several liability for the State, that the court erred in ruling that HRS § 663–10.9(4) was applicable, and that *Taylor–Rice v. State*, 91 Hawai'i 60, 979 P.2d 1086 (1999), was not relevant.[13]

## VI.

■ As noted earlier, the State's first argument is that the court erred in relying on HRS § 663–10.9(4) to impose joint and several liability against the State because HRS § 663–10.5 abolishes joint and several liability for all government entities. Bauer's first response to this argument is that this court need not reach that question because HRS § 663–10.5 contains a nonretroactivity clause limiting its application "only to causes of action based upon acts or omissions occurring on or after June 22, 1994." 1994 Haw. Sess. L. Act 213, § 4 at 517. Bauer asserts that the "key negligent acts or omissions" occurred in 1992, before the effective date of June 22, 1994, and, thus, HRS § 663–10.5 does not apply in this case.

This court has previously examined the nonretroactivity clause of HRS § 663–10.5 in *Doe Parents No. 1 v. State Dep't of Educ.*, 100 Hawai'i 34, 58 P.3d 545 (2002). In *Doe Parents No. 1*, the parents of school children who had been molested by a teacher (Norton) in 1995 sued the Department of Education (the DOE) for negligence and negligent infliction of emotional distress. *Id.* at 41, 51, 58 P.3d at 552, 562. It was concluded that the DOE was liable for (1) its negligent retention of Norton in 1993, (2) its negligent supervision of Norton from 1993 to the acts of molestation in 1995, (3) its interrogation of the children in 1995, and (4) its failure to inform the children's parents of their molestation accusations. *Id.* at 87, 58 P.3d at 598.

Given that the nonretroactivity clause made the statute applicable to "causes of action based upon acts or omissions" occurring on or after June 22, 1994, the plaintiffs had contended that the "key negligent act" of the DOE occurred in 1993 upon the retention of Norton after he had been acquitted in connection with a prior allegation of molestation. *Id.* This court agreed with the plaintiffs and stated that the nonretroactivity clause "requires a determination of when a government entity's employee engaged in the act or omission for which the entity is being held liable." *Id.* Thus, HRS § 663–10.5 was ruled inapplicable to the plaintiffs' claims to the extent the claims were based upon the DOE's negligent retention of Norton.

In the instant case, Bauer argues that key negligent acts and omissions by the State occurred before June 22, 1994. Specifically, she points to (1) the identification of the portion of the highway where Jeffrey's accident occurred as deficient in design by 1992 because of increasing traffic volume; (2) the development of several facilities on the Police Station Access Road that led to an increase in the number of left turns that would be made from Queen Kaahumanu Highway; and (3) a February 12, 1992 accident at the intersection of Queen Kaahumanu Highway and the Police Station Access Road that had given the State reasonable prior notice of an accident under circumstances similar to the one involving Jeffrey.

The State responds that the nonretroactivity clause of HRS § 663–10.5 does not apply because the 1992 accident was not the key act or omission on which the Kienkers based their cause of action. As indicated in its March 6, 2001 amended findings, the court found that (1) "[a]ccident history is not the only factor to be considered"; (2) "[i]n addition to accident history, the State also had notice of problems" through meetings of the Kona Traffic Safety Committee; (3) concerns "were expressed to State officials by the ... Committee in 1995, 1996, and 1997"; (4) after the Committee "expressed its concerns and recommendations to the State officials noth-

---

13. The State argues that the court relied solely on this court's holding in *Taylor–Rice v. State*, 91 Hawai'i 60, 979 P.2d 1086 (1999), but failed to consider the effect of HRS § 663–10.5. In that case, this court held that HRS § 663–10.9(4) was applicable to the State in a motor vehicle accident case. This court did not entertain a challenge regarding the application of HRS § 663–10.5 because that statute was enacted after the automobile accident in that case. *Id.* at 79–80, 979 P.2d at 1105–06.

ing was done to correct the problems;" and (5) "[t]he dangerousness and defective condition of the intersection should have been known to the State *based on the combination* of the increase in traffic volume, the development of the area served by the police station access road, prior accidents and the queuing condition at the intersection." (Emphasis added.)

Thus, the court did not expressly find any one event, such as the 1992 accident, to be a key negligent act or omission occurring before June 22, 1994. Rather, based on its amended findings of fact, it is apparent that the court considered motor vehicle incidents that occurred prior to June 22, 1994, specifically the motor vehicle accidents between May 24, 1990 and July 20, 1993, and factors before and after 1994, in ultimately finding that the State was negligent in 1997.[14] The State does not dispute that these incidents occurred. Because the court's findings of fact are supported by substantial evidence as related above, we conclude that no clear error exists to disturb such findings.

## VII.

◾ The Kienkers' third argument is that HRS § 663–10.5 does not supercede HRS § 663–10.9. On the other hand, the State replies that both the plain language and the legislative history of HRS § 663–10.5 demonstrate that that section prevails.

### A.

The legislature enacted HRS § 663–10.9 in 1986, before it enacted HRS § 663–10.5.1986 Haw. Spec. Sess. L. Act 2, § 17 at 10–11. To reiterate, HRS § 663–10.9(3) and (4) provide, in pertinent part, as follows:

> *Abolition of joint and several liability; exceptions.*
>
> Joint and several liability for joint tortfeasors as defined in section 663–11 is abolished except in the following circumstances:
>
> . . . .

(3) For the recovery of noneconomic damages in actions, other than those enumerated in paragraph (2), involving injury or death to persons against those tortfeasors whose individual degree of negligence is found to be twenty-five per cent or more under [§ ] 663–31. *Where a tortfeasor's degree of negligence is less than twenty-five percent, then the amount recoverable against that tortfeasor for noneconomic damages shall be in direct proportion to the degree of negligence assigned.*

(4) For recovery of *noneconomic damages in motor vehicle accidents involving tort actions relating to the maintenance and design of highways* ... upon a showing that the affected joint tortfeasor was given *reasonable prior notice of a prior occurrence under similar circumstances* to the occurrence upon which the tort claim is based....

(Emphases added.) The legislative history of HRS § 663–10.9 indicates that the fourth exception, which relates to noneconomic damages in motor vehicle accidents arising from the maintenance and design of highways was intended to "place governmental and nongovernmental agencies responsible for the design and maintenance of highways within the twenty-five percent rule of the third exception despite the exception for motor vehicle accidents *unless prior notice was given of an existing problem and proper corrective steps were not taken.*" Sen. Stand. Comm. Rep. No. S5–86, in 1986 Senate Journal, at 29 (emphasis added).

Eight years later the legislature enacted HRS § 663–10.5.1994 Haw. Sess. L. Act 213, §§ 1–4. at 516–17. As related before, that statute provides, in relevant part, as follows:

> *Government entity as a tortfeasor; abolition of joint and several liability. Notwithstanding section 663–11 to 663–13, 663–16, 663–17, and section 663–31, in any case where a government entity is deter-*

---

14. It may be noted that in its original September 14, 2000 findings and conclusions, the court did not render a finding that notice to the State of a prior similar act occurred in 1992, lending some weight to the conclusion that it was the combination of events spanning 1988 through 1997 that the court relied on in finding the State negligent.

*mined to be a tortfeasor* along with one or more other tortfeasors, the government entity shall be liable for *no more than that percentage share of the damages attributable to the government entity.*

(Emphases added.)

■ When interpreting a statute, the court's sole duty is to give meaning to the legislature's intent, which should " 'be obtained primarily from the language contained in the statute itself.' " *State v. Putnam,* 93 Hawai'i 362, 367, 3 P.3d 1239, 1244 (2000) (quoting *Gray v. Admin. Dir. of the Court,* 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997)) (other citations omitted). The State asserts that because HRS § 663–10.5 excludes the provisions of HRS § 663–11 (1993) relating to joint tortfeasors and states that HRS § 663–10.5 applies "in any case" in which the government is a tortfeasor, the legislature communicated its intention to exclude the State from joint and several liability under chapter 663.

However, HRS § 663–11 merely defines the term "joint tortfeasors." Under HRS 663–11 the term means "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." In *Petersen v. City & County of Honolulu,* 51 Haw. 484, 462 P.2d 1007 (1969), this court noted that HRS §§ 663–11 to 663–17, which were derived from the Uniform Contribution Among Joint Tortfeasors Act, "provide[ ] for apportionment of the common liability of joint tortfeasors as among themselves, *but [they do] not affect the joint and several liability of each defendant." Id.* at 485, 462 P.2d at 1008 (emphasis added). The Commissioner's Note to Section 2(4) of the Uniform Act was cited as follows:

> [The section] would permit apportionment of pro rata shares of liability of the joint tortfeasors as among themselves. *It would not affect their joint and several liability toward the injured person.* . . . The draftsmen of the Act feel that there is a very strong case to be made for apportioning the common liability as among the tortfeasors when the evidence clearly indicates that one or more of the tortfeasors

was much more at fault than one or more of the others. *At the same time they wish to point out that each tortfeasor is still completely and fully liable toward the injured person.*

*Id.* at 485 n. 1, 462 P.2d at 1008 n. 1 (emphases added). Thus, the State's argument that the express mention of HRS § 663–11 in HRS § 663–10.5 is indicative of the legislature's intent to exclude the government's joint and several liability in every instance is not persuasive.

Moreover, the fact that HRS § 663–10.5 states that it applies "in any case" does not avoid the fact that an exception can still co-exist with the application of § 663–10.5. The legislative intent was to impose joint and several liability where the government had reasonable prior notice of any dangerous or defective condition, as discussed in Section VIII, *infra.*

### B.

The highway accident exception to abolition of joint and several liability listed in Section 663–10.9(4) established the joint and several liability of the State to the Kienkers for highway design torts. We may presume that the legislature was aware of the existing exceptions to the abolition of joint and several liability listed in HRS § 663–10.9 at the time it subsequently enacted HRS § 663–10.5. *See Reefshare, Ltd. v. Nagata,* 70 Haw. 93, 98, 762 P.2d 169, 173 (1988) (stating that "courts will not presume an oversight on the part of the legislature where such presumption is avoidable"); *Marsland v. Pang,* 5 Haw.App. 463, 485, 701 P.2d 175, 192 (1985) (assuming that the legislature was aware of the state of the law of nuisance abatement at the time it enacted another nuisance statute).

The express language of HRS § 663–10.5 lacks any mention of Section 663–10.9. Although HRS § 663–10.5 was enacted after HRS § 663–10.9, HRS § 663–10.5 does not state that it supercedes HRS § 663–10.9(4). That such language is lacking is significant, and one must assume, intended. *See First Ins. Co. of Hawaii v. Lawrence,* 77 Hawai'i 2, 8, 881 P.2d 489, 495, (holding that provisions in a statute in derogation of principles of

common law tort liability " 'must be strictly construed and, where it does not appear that there was a legislative purpose in the statute to supersede the common law, the common law applies' ") (quoting *Doi v. Hawaiian Ins. & Guar. Co.,* 6 Haw.App. 456, 465, 727 P.2d 884, 890 (1986)), *reconsideration denied,* 77 Hawai'i 373, 884 P.2d 1149 (1994); *cf. Hill v. Halmhuber,* 225 Ky. 394, 9 S.W.2d 55, 56–57 (1928) (noting that when a statute is in derogation of the common law, the intention of the legislature will not be presumed to repeal the common law or a prior statute unless it clearly appears that the legislature intended to cover the whole subject). Thus, the fact that the legislature did not expressly address the exceptions listed in HRS § 663–10.9 is indicative of an intent to retain the exception in Section 663–10.9(4), with respect to HRS § 663–10.5.

Had the legislature intended that HRS § 663–10.5 should supercede HRS § 663–10.9 or exempt the State from joint and several liability for tortious maintenance and design of highways, it could have easily and clearly said so by including Section 663–10.9(4) in the introductory "Notwithstanding" clause of Section 663–10.5. The legislature could also have employed broader exclusionary language in the introduction to HRS § 663–10.5.

■ Words such as "notwithstanding any other law to the contrary," which would have the effect advocated by the State and that have been utilized in other statutes, were not adopted. *See State v. Rice,* 66 Haw. 101, 102, 657 P.2d 1026 (1983) (holding that the "notwithstanding any law to the contrary" clause in Section 72–1200(4) removes the court's discretion to grant deferred acceptance of guilty pleas under HRS § 853–1). Thus, the plain language of Section 663–10.5 did not express any legislative intent that Section 663–10.9(4) be superceded or that the State be exempted from joint and several liability in a situation where Section 663–10.9(4) applied.[15]

### C.

■ Furthermore, it may be observed that HRS § 663–10.5 and HRS § 663–10.9 are statutes that overlap on the question of joint and several liability. Each statute refers to the abolition of joint and several liability. HRS § 663–10.5 states broadly that "the government entity shall be liable for no more than that percentage share of the damages attributable to the government entity." On the other hand, HRS § 663–10.9 enumerates exceptions to the abolition of joint and several liability. Where two statutes overlap in their application effect can be given to both. *See Richardson v. City & County of Honolulu,* 76 Hawai'i 46, 55, 868 P.2d 1193, 1202 (1994) (stating that "where there is a plainly irreconcilable conflict between a general and a specific statute concerning the same subject matter, the specific will be favored[but] where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored" (internal quotation marks and citations omitted)). Here, it is possible to give effect to both statutes inasmuch as the broad language of HRS § 663–10.5 may be construed as abolishing the government's joint and several liability unless an exception such as that embodied in HRS § 663–10.9 applies.

### D.

The State contends, however, that Section 663–10.5 is the more specific statute, and therefore should control, citing *Littleton v. State,* 6 Haw.App. 70, 73, 708 P.2d 829, 832 (1985), for the proposition that a statute explicitly referring to the State's liability is more "specific" for purposes of statutory construction. But the result in *Littleton* is not inapposite. In *Littleton,* the Intermediate Court of Appeals (ICA) decided that HRS § 478–2 (Supp.1984) did not impliedly repeal HRS § 662–8 (1976). *Id.* at 72, 708 P.2d at 831.

HRS § 478–2 (Supp.1984) provided, in relevant part, that "[i]nterest at the rate of ten percent a year, and no more, shall be allowed

---

**15.** The State also maintains that if Section 663–10.9(4) controls, then Section 663–10.5 becomes meaningless. However, we must reject the State's argument inasmuch as "we must assume

that the legislature would not enact superfluous language[.]" *Heatherly v. Hilton Hawaiian Village Joint Venture,* 78 Hawai'i 351, 355, 893 P.2d 779, 783 (1995).

on any judgment recovered before any court in the State, in any civil suit." *Littleton,* 6 Haw.App. at 72 n. 3, 708 P.2d at 831 n. 3. Contrastingly, HRS § 662–8 was viewed as the specific statute. *Id.* HRS § 662–8 (1976) stated in pertinent part, that "[o]n all final judgments rendered against the State ... interest shall be computed at the rate of four per cent a year. ..." *Id.* The ICA concluded that HRS § 662–8 "carved out of the general subject of judgment interest a specific exception relating to judgments against the State." *Id.*

Assuming, *arguendo,* that "there is a plainly irreconcilable conflict between a general statute and a specific statute concerning the same subject matter," *Richardson,* 76 Hawai'i at 55, 868 P.2d at 1202, HRS § 663–10.5 is the general statute insofar as it provides for the abolition of joint and several liability for a government entity generally, and lists no exceptions in its provisions. On the other hand, HRS § 663–10.9 expressly refers to "exceptions" to the abolition of joint and several liability, as indicated in its title. *See Spears v. Honda,* 51 Haw. 1, 17, 449 P.2d 130, 139 (1968) (stating that "[i]n construing an act, the title may be resorted to for the purpose of ascertaining the meaning of the act"). HRS § 663–10.9, then, is more specific with regard to determining the State's liability, particularly with respect to the maintenance and design of highways.

*Littleton* does not stand for a general rule that any time a statute relates to the State's liability it is more "specific" for purposes of statutory construction, but that the statutes at issue must be analyzed on a case by case basis. In the situation here, it is evident as it pertains to the State that HRS § 663–10.5 is the general statute, and HRS § 663–10.9, which lists exceptions to the general abolition of joint and several liability, is the specific statute which describes the State's potential liability in cases involving "the maintenance and design of highways ... and any other highway-related device upon a showing that the affected joint tortfeasor was given reasonable prior notice of a prior occurrence

...." Therefore, under rules of statutory construction, the specific statute, in this case HRS § 663–10.9(4), would be given effect.

## E.

Citing to *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000), the State also maintains that because HRS § 663–10.5 is the later enacted statute, it is favored. But that case did not indicate that a later-enacted statute always controls. In *Brown & Williamson,* the Supreme Court grappled with a regulatory scheme based upon six statutes enacted over a thirty-five year period. *Id.* at 143, 120 S.Ct. 1291. Upon the observation that a "distinct regulatory scheme" exists, the Court concluded under the circumstances that "a specific policy embodied in a later federal statute should control our construction of the [earlier] statute, even though it ha[s] not been expressly amended." *Id.* at 143–44, 120 S.Ct. 1291 (internal quotation marks and citations omitted). Such a scheme or history of legislation is not present in the instant case, and, thus, *Brown & Williamson* does not aid in determining whether HRS § 663–10.5 supercedes HRS § 663–10.9.[16]

## VIII.

Additionally, the legislative history of HRS § 663–10.5 supports the conclusion that the statute was not intended to supersede or impliedly repeal HRS § 663–10.9. House Bill No. 1088, introduced in 1993 as a short form bill, and reintroduced in 1994, eventually became HRS § 663–10.5.1994 Haw. Sess. L. Act 213, §§ 1–4 at 516–17. As proposed in 1993, the purpose of H.B. 1088 was to "abolish joint and several liability for a joint tortfeasor where that tortfeasor's degree of fault is less than or equal to the degree of fault of the person seeking recovery of damages." Hse. Stand. Comm. Rep. No. 496, in 1993 House Journal, at 1173. The House Judiciary Committee apparently referred favorably

---

**16.** We do, however, agree with the State that *Taylor–Rice* is not controlling of our inquiry. Although that case held that Section 663–10.9(4) was applicable to the State, as mentioned before, the case is not helpful to our decision herein inasmuch as Section 663–10.5 was enacted after the automobile accident in that case. 91 Hawai'i at 79–80, 979 P.2d at 1105–06.

to the exception under HRS § 663–10.9(4) created for highway cases where the government had no prior notice of a defect:

> [Y]our Committee believes that it is appropriate, in very limited circumstances and because of the unique responsibilities of the government, *to continue the practice of providing some shielding to the government from joint and several liability in certain highway cases where the government has had no notice of a defect.*

Hse. Stand. Comm. Rep. No. 654, in 1993 House Journal, at 1240 (emphasis added).

Moreover, a 1993 Senate Committee report also seemingly confirmed that the legislature desired to retain HRS § 663–10.9(4) which had been previously enacted in 1986:

> *Your Committee has also retained the provisions of the bill relating to motor vehicle accidents involving the maintenance and design of highways,* but has amended the provision affecting joint tortfeasors who have had reasonable prior notice of dangerous conditions, since public policy is better served by holding tortfeasors who know of dangerous conditions responsible for their negligence in failing to take reasonable precautions to prevent injury or death to others.
>
> Your Committee finds that the provisions enacted in 1986 relating to the abolition of joint and several liability were a good start in addressing the issue and have worked reasonably well in preventing any crisis involving joint and several liability.

Sen. Stand. Comm. Rep. No. 1350, in 1993 Senate Journal, at 1259 (emphasis added).

The legislature ultimately decided against amending HRS § 663–10.9(4),[17] and adopted

HRS § 663–10.5. Thus, in 1994, instead of adopting the 1993 proposal, the legislature sought to limit a governmental entity's liability to "no more than that percentage share of the damages attributable" to it.[18] In doing so, the Committee noted that "[HRS § 663–10.5] is necessary to ensure fairness and equity for government entities who, because of their 'deep pockets', may be otherwise required to pay more than their fair share when determined to be a joint tortfeasor." Hse. Conf. Comm. Rep. No. 48, in 1994 House Journal, at 803. Nevertheless, it is evident from the history of H.B. 1088 that the intent of the legislature was to "retain[ ]" HRS § 663–10.9(4). Sen. Stand. Comm. Rep. No. 1350, in 1993 Senate Journal, at 1258–59.

In addition, it is significant that in 1995, the legislature, after enacting HRS § 663–10.5, made HRS § 663–10.9(4) a permanent law by deleting the provision providing for its repeal as of October 1, 1995. 1995 Haw. Sess. L. Act 130, §§ 1–3 at 208.[19] Thus, the legislature evinced its intention to continue Section 663–10.9(4) in force even after it enacted Section 663–10.5.

■ The State asserts that the court "substituted its own policy preferences for those of the legislature's" and that the Kienkers here are looking to the "deep pocket" of the State. However, we note that the legislature's intent regarding H.B. 1088 focused on "fairness":

> [A]s between an innocent plaintiff and a defendant who bears fault, public policy should tilt towards the innocent injured plaintiff, while at the same time recognizing that no defendant should be required

---

17. In 1993, the legislature originally stated that H.B. 1088 amended Section 663–10.9, but in 1994, when the bill passed, the legislature had deleted that language from its report. Sen. Stand. Comm. Rep. No. 1350, in 1993 Senate Journal, at 1258; Hse. Conf. Comm. Rep. No. 48, in 1994 House Journal, at 803.

18. As proposed in 1994, HRS § 663–10.5 stated as follows:

> § 663—Government entity as a tortfeasor; abolition of joint and several liability. *Notwithstanding the provisions of sections 663–11 to 663–17 and section 663–31,* in any case

where a government entity is determined to be a tortfeasor along with one or more other tortfeasors, the government entity shall be liable for no more than that percentage share of the damages attributable to the government entity.

1994 Haw. Sess. L. Act 213, § 1 at 516–17.

19. The Act removed the sunset provision initially embodied in Section 31, repealing the bracketed material as follows: " 'Section 31. This Act shall take effect upon its approval[, and Sections 2, 4, 5, 6, 7, and 20 shall be repealed on October 1, 1995].' " 1995 Haw. Sess. L. Act 130, §§ 1–3 at 208.

to bear a disproportionate share of the judgment when that defendant shoulders less blame than the plaintiff.

Your Committee believes the solution proposed in this bill represents a logically consistent approach to the problem of fairness.... If the defendant's degree of fault is more than that of the [p]laintiff, public policy tilts toward protecting the interests of the less blameworthy injured [p]laintiff, and the defendant is jointly and severally liable.

Your Committee believes *the same concept should apply to the government,* both as plaintiff or defendant, yet your Committee believes that *it is appropriate, in very limited circumstances and because of the unique responsibilities of the government, to continue the practice of providing some shielding to the government from joint and several liability in certain highway cases where the government has had no notice of a defect.*

Hse. Stand. Comm. Rep. No. 654, in 1993 House Journal, at 1240 (emphases added). H.B. No. 1088 eventually passed in 1994 to become HRS § 663–10.5 with, as earlier indicated *supra,* modifications in its "notwithstanding" language. Therefore, as demonstrated by the legislative history of HRS § 663–10.5, in order to achieve fairness, the legislature found it appropriate to shield the State from joint and several liability *"in very limited circumstances ...* in certain highway cases *where the government has had no notice of a defect."* Hse. Stand. Comm. Rep. No. 654, in 1993 House Journal, at 1240 (emphases added). Hence, the legislature did not envision that the State would be completely shielded from joint and several liability where it had "prior notice" of highway defects. We conclude that HRS § 663–10.5 does not supercede or impliedly repeal HRS § 663–10.9.[20]

IX.

As stated previously, the State's second argument is that the court abused its discretion in amending conclusion no. 17 on March 16, 2001, by increasing the percentage of fault attributed to the State from 15% to 20%. The State declares that the court allowed the Kienkers to use HRCP Rule 52(b) to "secure a rehearing on the merits," in violation of that rule. HRCP Rule 52(b) provides, in pertinent part, that "the court may amend its findings or make additional findings and may amend the judgment accordingly."

The State points out that in the Kienkers' motion to amend to find the State as 25% at fault and Bauer as 75% at fault, the Kienkers presented two arguments. These arguments were (1) under *Taylor–Rice,* the State should be found more at fault for the accident and (2) under HRS § 663–10.9(3),[21] if the court found the State at least 25% at fault, the State would be potentially liable for the entire noneconomic damages award. The State contends that because these were the *same* arguments the Kienkers and Bauer had presented during the trial on liability, they presented no new evidence or law in the motion to amend. The State argues that therefore the court entered no new findings but only findings detailing notice the State had received of prior similar occurrences.

However, according to the motion to amend, the Kienkers requested the judgment be amended because the "State knew of the dangerousness and defective condition of the intersection, had an opportunity to correct it and failed to do so." In their motion, the Kienkers referred to prior accidents which the court had previously failed to mention in its findings. Thus, the court made amended findings at paragraphs 42A, 42B, and 42C

---

**20.** The State also maintains that Section 663–10.5 is a limitation on the legislature's waiver of the State's sovereign immunity under HRS § 662–2. We need not reach this argument because it was not raised before the court. "As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases." *State v. Moses,* 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003).

**21.** As previously noted, HRS § 663–10.9(3) provides an exception to the abolition of joint and several liability. Unless covered by cases under subsection (2), HRS § 663–10.9(3) permits the recovery of noneconomic damages involving injury or death to persons, where the tortfeasor's individual degree of negligence is found to be greater than 25%.

regarding the accident in 1992 and "the other rear-end collisions" which "also gave the State reasonable notice of prior occurrences."

 A trial court's decision to grant or deny a motion to amend is reviewed under the abuse of discretion standard. *Roxas*, 89 Hawai'i at 115, 969 P.2d at 1233. " 'An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Id.* (quoting *State v. Davia*, 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998)). Federal Rules of Civil Procedure (FRCP) Rule 52 is substantially similar to HRCP Rule 52(b).[22] "Where a Hawai'i rule of civil procedure is identical to the federal rule, 'the interpretation of this rule by federal courts is highly persuasive.' " *Collins v. S. Seas Jeep Eagle*, 87 Hawai'i 86, 88, 952 P.2d 374, 376 (1997) (quoting *Shaw v. N. Am. Title Co.*, 76 Hawai'i 323, 326, 876 P.2d 1291, 1294 (1994)). In that regard, the purpose of FRCP Rule 52(b) is for the trial court to "correct manifest errors of law or fact." *See Lyons v. Jefferson Bank & Trust*, 793 F.Supp. 989, 990–91 (D.Colo.1992) (denying defendant bank's motion to amend findings of fact to support theories raised in post-trial motions).

Under FRCP Rule 52(b), the trial court may amend its findings under the Rule even if doing so would effectively reverse the judgment. *See Nat'l Metal Finishing Co. v. Barclays Amer./Commercial, Inc.*, 899 F.2d 119, 122–23 (1st Cir.1990) (disagreeing with plaintiff's contention that FRCP Rule 52(b) does not allow a court "to so thoroughly alter its findings as to reverse completely the prior judgment" and holding that the purpose of FRCP Rule 52(b) is "to permit the correction of any manifest errors of law or fact" even if the errors require reversal of a previous judgment).

In light of the construction given FRCP Rule 52(b), HRCP Rule 52(b) authorized the court to amend its findings and alter its judgment. The facts concerning other colli-

sions occurring between 1990 and 1993 revealed the degree of prior notice the State had of similar occurrences. An objective basis for the court's decision to alter its ruling on the State's percentage of fault thus existed. Hence, it cannot be concluded that the court clearly exceeded the bounds of reason in increasing the State's percentage of fault. The court therefore did not abuse its discretion.[23]

## X.

### A.

 On cross-appeal Bauer first challenges the June 25, 2002 order of the court granting the State's Rule 60 motion. As earlier stated, the gist of the State's motion was that a discrepancy existed between the March 26, 2001 findings of fact and conclusions of law and the November 26, 2001 final judgment insofar as the final judgment indicated that the State was jointly and severally liable for economic damages. Inasmuch as the State's motion was made pursuant to HRCP Rule 60, the court's order is reviewed under an abuse of discretion standard and not a *de novo* standard of review, as Bauer seeks. *Beneficial Hawaii, Inc. v. Casey*, 98 Hawai'i 159, 164, 45 P.3d 359, 364 (2002) (stating that the abuse of discretion standard applies to a Rule 60(b) motion); *Amantiad v. Odum*, 90 Hawai'i 152, 160, 977 P.2d 160, 168 (1999) (applying an abuse of discretion standard to a Rule 60 motion).

Bauer contends that the court's order should be reversed because the court lacked jurisdiction under HRCP Rule 60(a) or (b) to grant the relief requested, and, alternatively, the court abused its discretion in granting partial relief from judgment. The court did not state whether its decision to grant the Rule 60 motion was founded upon Rule 60(a) or Rule 60(b). Thus, each is examined.

As earlier noted, HRCP Rule 60(a) provides:

---

**22.** Federal Rules of Civil Procedure (FRCP) Rule 52(b) provides, in pertinent part, that "the court may amend its findings-or make additional findings-and may amend the judgment accordingly."

**23.** Because we come to this conclusion, we need not address the Kienkers' argument that the State is bound by its pleadings.

**(a) Clerical Mistakes.** Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. *During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the supreme court, and thereafter while the appeal is pending may be so corrected with leave of the supreme court.*

(Emphasis added.)

Also, as indicated before, the State filed its appeal with this court on February 12, 2002. The court's order granting the State's motion for partial relief from judgment was entered on June 25, 2002. Bauer asserts that under Rule 60(a), the court could only adopt corrections with leave of this court and the court lacked such leave when it granted the State's motion. However, the court did have jurisdiction under Rule 60(a) because this court had *dismissed* the State's appeal on June 12, 2002. Thus, the appeal was no longer "pending" at the time the court granted the State's motion. Accordingly, the court was vested with jurisdiction to grant the motion pursuant to Rule 60(a).

Bauer next argues that the court lacked jurisdiction to grant the motion under HRCP Rule 60(b) because the court did not follow the procedure set out in *Life of the Land v. Ariyoshi,* 57 Haw. 249, 553 P.2d 464 (1976). In *Ariyoshi,* this court stated that, "[j]urisdiction is in this court while the appeal is pending.... Nevertheless, the [Rule 60(b)] motion may be made and considered in the circuit court. If that court indicates that it will grant the motion, the appellant may then move in this court for a remand of the case." *Id.* at 252, 553 P.2d at 466. Again, however, the appeal was not pending in this court at the time the State's motion was granted. Therefore, the court had jurisdiction to grant the State's motion under Rule 60(b).

#### B.

▪ As related above, Bauer also argues that it is an abuse of discretion for the court to grant relief from judgment under HRCP Rule 60(a) where the record does not indicate a clerical mistake existed. But cases construing Rule 60(a) have generally held that a judgment may be amended when the court has shown a clear intention which the judgment neglected to reflect. *See Whitman v. Whitman,* 91 Hawai'i 468, 470, 985 P.2d 659, 661 (1999) (holding that "obvious mathematical errors" could be corrected, and ruling that Rule 60(a) "is used to make the judgment or record speak the truth and ... to make it say ... what originally was pronounced" (internal quotation marks and citation omitted)); *Donnelly v. Donnelly,* 98 Hawai'i 280, 286, 47 P.3d 747, 753 (App .) (holding that Rule 60(a) allowed amendment where a proposed divorce decree substantively deviated from a prior written decision and order), *cert. denied,* 98 Hawai'i 497, 50 P.3d 973 (2002); *Davis v. Wholesale Motors, Inc.,* 86 Hawai'i 405, 416, 949 P.2d 1026, 1037 (App.1997) (stating that Rule 60(a) "permits the correction of a judgment 'if the intention to include a particular provision in the judgment was clear, but the judge neglected to include that provision[,]'" and determining that amendments to a judgment were proper when the record reflected the court's intent to include amended provisions in the original judgment (citation omitted)). Accordingly, the court properly exercised its authority under Rule 60(a) to amend its judgment to conform it to the amended findings and conclusions. In addition, under the foregoing circumstances described, the court also properly exercised its discretion under Rule 60(b), wherein Rule 60(b) allows the court to correct its own mistakes. *Donnelly,* 98 Hawai'i at 286, 47 P.3d at 753.

In the instant case, the court granted the State's motion to amend the judgment to hold the State jointly and severally liable *only* for noneconomic damages pursuant to HRS § 663–10.9(4). While Bauer argues that there is no indication that the court's actual intention was that the State should be held jointly and severally liable only for noneconomic damages, the record demonstrates that it was the court's intention to do so.

According to the March 6, 2001 amended findings and conclusions, conclusion no. 21 states that "[s]ince Defendant State had no-

tice of a similar previous accident, State is jointly and severally liable with Defendant Bauer for noneconomic damages." Notably absent in the amended findings and conclusions is any mention of economic damages. Thus, the record reveals the court's intent was to find joint and several liability for noneconomic damages and, conversely, the record does not disclose any intent to hold the State jointly and severally liable for economic damages.[24]

## XI.

■ Bauer challenges[25] the August 9, 2002 ruling of the court denying Bauer's motion for reconsideration or in the alternative, for clarification of the order granting the State's Rule 60 motion. We review Bauer's challenge to the motion for reconsideration under the abuse of discretion standard. *Ass'n Of Apartment Owners of Wailea Elua v. Wailea Resort Co.*, 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002). Bauer makes two arguments, (1) that the court erred when it denied Bauer's motion without specifying whether it granted relief pursuant to Rule 60(a) or Rule 60(b), and (2) that the court erred when it denied Bauer's motion "on the erroneous conclusion that [HRS § ] 663–10.5 superceded [HRS § ] 663–10.9(1) and exempted the State from joint and several liability for economic damages when Defendant State was a joint tortfeasor in an action including injury or death to persons."

We have already addressed Bauer's first contention. As previously stated, the court did not err with regard to exercising its authority to rule under either Rule 60(a) or Rule 60(b). We address Bauer's second argument along with her contention that the court erred in its May 12, 2003 final judgment, because both arguments are based on the assertion that the court proceeded under the erroneous conclusion that HRS § 663–10.5 superceded HRS § 663–10.9(1).

■ The State maintains that the court never ruled on the issue of whether HRS § 663–10.5 superseded HRS § 663–10.9(1), and the court's decision cannot be "implied." The fact that the court never specifically ruled on the issue of whether HRS § 663–10.5 supercedes HRS § 663–10.9(1) does not prohibit us from considering the issue. In *Gregg Kendall & Assocs., Inc. v. Kauhi*, 53 Haw. 88, 91–92, 94, 488 P.2d 136, 139–140 (1971), this court ruled that the circuit court did not rule on a particular issue because the circuit judge had erroneously deemed that issue waived. Nonetheless, it was stated that,

> ordinarily the issue would be remanded to the trial court for its resolution especially if in such determination factual issues are involved ... inasmuch as it is a question of law which must ultimately be decided by this court, we believe that in the furtherance of justice, the issue should be determined by this court without remand.

*Id.* at 94, 488 P.2d at 141.

■ In the instant case, the question of whether HRS § 663–10.5 superseded HRS § 663–10.9(1) is an issue of law that can be determined by this court without remand. Like HRS § 663–10.9(4), HRS § 663–10.9(1) sets forth an exception to the elimination of joint and several liability by allowing "recovery of economic damages against joint tortfeasors in actions involving injury or death to persons[.]" For the same reasons discussed with respect to HRS § 663–10.9(4) in the State's appeal, we conclude that HRS § 663–10.5 does not supercede or impliedly repeal HRS § 663–10.9(1). Thus, the court erred in its final judgment and in its order denying Bauer's motion for reconsideration or in the alternative clarification.

The parties stipulated that the Kienkers incurred $200,000 in economic damages. In the March 6, 2001 amended findings and conclusions, the court decided in conclusion no. 9 that "[d]efendant State's breach of its

---

24. This result also is consistent with the Kienkers' December 15, 2000 motion to amend the findings and conclusions. In the motion, the Kienkers and Bauer did not argue that the State was jointly and severally liable for economic damages pursuant to HRS § 663–10.9(1).

25. This discussion addresses Bauer's second and third arguments on cross-appeal, as both arguments contend that the court erred in exempting the State from joint and several liability for economic damages.

duty to reasonably design, operate and maintain the Queen K[aahumanu] Highway/police station access road intersection was a legal cause of plaintiffs' damage." The court also concluded in conclusion no. 16 that "[t]he negligence of Danielle Bauer was a legal cause of Plaintiff Kienker's injuries." After quoting HRS § 663–10.9(4), the court declared in conclusion no. 21 that "[s]ince Defendant State had notice of a similar previous accident, State is jointly and severally liable with Defendant Bauer for noneconomic damages."

Only a joint tortfeasor is liable for noneconomic damages under HRS § 663–10.9(4). Hence, the court decided that the State was a joint tortfeasor. The court's conclusion no. 16 confirms that the court found that Jeffrey sustained injuries. As a result, the amended findings and conclusions satisfied the elements of HRS § 663–10.9(1) to warrant recovery thereunder. But in its May 12, 2003 final judgment, the court failed to enter judgment against Bauer and the State jointly and severally for the Kienkers' economic damages. In light of the court's findings and conclusions and the stipulation among the parties as to economic damages, we conclude the State is jointly and severally liable for the Kienkers' economic damages of $200,000, pursuant to HRS § 663–10.9(1).

### XII.

In sum, we affirm the court's May 12, 2003 judgment insofar as it adjudges the State as 20% at fault and holds the State jointly and severally liable for noneconomic damages under HRS § 663–10.9(4). In addition, we conclude that the court erred in failing to enter judgment for economic damages under HRS § 663–10.9(1) and hereby order the case be remanded to the court with instructions to the court to amend the final judgment to provide additionally that the State is jointly and severally liable to the Kienkers for $200,000 in economic damages. Thus, we remand the May 12, 2003 final judgment for amendment and we vacate the August 9, 2002 order denying Bauer's motion for reconsideration or in the alternative, clarification of the order granting the State's motion for partial relief from judgment.